## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EFE ERCELIK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| PATRICIA HYDE, Acting Director of | ) | **PETITION FOR WRIT OF** |
| Boston Field Office, U.S. Immigration and | ) | **HABEAS CORPUS** |
| Customs Enforcement; KRISTI NOEM, | ) | |
| Secretary of the U.S. Department of | ) | |
| Homeland Security; PAMELA BONDI, | ) | |
| Attorney General of the United States; in | ) | |
| their official capacities, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

_____

## <u>INTRODUCTION</u>

1.     Efe Ercelik ("Mr. Ercelik") is a twenty-two year-old young man and citizen of Turkey, who is enrolled at Hampshire College pursuant to an F-1 student visa. He is and has been in the constructive custody of Respondent U.S. Department of Homeland Security ("DHS") since the morning of April 16, 2025, when DHS agents, including from U.S. Immigration and Customs Enforcement ("ICE") and Homeland Security Investigations ("HSI") arrived at Mr. Ercelik's home, banged on his door, and demanded entry despite possessing no warrant for his arrest. At the time of this filing, Mr. Ercelik remains confined to his home in Sunderland, Massachusetts because DHS agents are parked outside waiting to arrest him, and for fear of arrest by DHS agents, at least in part on the basis of his views about the situation in Palestine.

2.     Mr. Ercelik does not want to remain in the United States any longer than is necessary for him to participate in his own defense and pursuant to his right to confront criminal

charges against him before the Eastern Hampshire District Court in Belchertown, Massachusetts. A hearing in that matter was originally scheduled for May 7, 2025.  The hearing is now scheduled for April 17, 2025. Following the resolution of that matter, Mr. Ercelik intends to depart the country on his own free will.

3.      Absent an order from this Court, on information and belief and based on DHS's actions in similar cases, DHS will take Mr. Ercelik into DHS custody, detain him, and remove him from this District. In so doing, DHS would deprive Mr. Ercelik of his right to participate in his own defense.

4.      Mr. Ercelik seeks immediate relief from this Court enjoining DHS from removing him from this District or from the United States, and ordering Respondents to release him from their immediate and constructive custody.

## JURISDICTION

5.      This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

7.      This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

8.      Venue is proper under 28 U.S.C. § 1391(b) because Mr. Ercelik is a resident of Massachusetts. Venue is also proper because a substantial part of the events giving rise to the claim

occurred in the District of Massachusetts: namely, DHS agents, including ICE agents have camped outside Mr. Ercelik's residence in Massachusetts to detain him if he exits his home.

## REQUIREMENTS OF 28 U.S.C. § 2243

9.    The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

10.    Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## PARTIES

11.    Plaintiff Efe Ercelik is a native and citizen of Turkey and a resident of Sunderland, Massachusetts.

12.    Respondent Patricia Hyde is sued in her official capacity as the Acting Director of the Boston Field Office of U.S. Immigration and Customs Enforcement. Respondent Hyde is the legal custodian of Mr. Ercelik and has authority to instruct ICE officers to release him from constructive and/or physical custody.

13.    Respondent Kristi Noem is sued in her official capacity as the Secretary of the U.S. Department of Homeland Security (DHS). In this capacity, Respondent Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees U.S.

Immigration and Customs Enforcement, the component agency responsible for Petitioner's custody. Respondent Noem is a legal custodian of Mr. Ercelik.

14.     Respondent Pamela Bondi is sued in her official capacity as the Attorney General of the United States. In this capacity, she directs agencies within the United States Department of Justice, including the Executive Office for Immigration Review (EOIR), which houses the immigration courts and Board of Immigration Appeals. Respondent Bondi is responsible for the administration of immigration laws pursuant to 8 U.S.C. § 1103(g) and oversees EOIR. Respondent Bondi is a legal custodian of Petitioner.

## FACTS

15.     Petitioner is a twenty-two year-old citizen of Turkey. He was accepted into his program of study at the University of Massachusetts Amherst and entered the United States on an F-1 student visa to enroll in that program beginning in the Spring of 2022.  He later transferred to Hampshire College and is in valid student status with a valid Certificate of Eligibility for Nonimmigrant Student Status (Form I-20) and valid Student and Exchange Visitor (SEVIS) status as of April, 16, 2025. *See* Exhibit A (SEVIS confirmation screen dated April 16, 2025).

16.     In October 2023, Mr. Ercelik was at a student event at the University of Massachusetts Amherst campus where there was a political event. The event was a pro-Israel demonstration. Mr. Ercelik is pro-Palestine. Toward the end of the demonstration, Mr. Ercelik and another student had a physical altercation. At that event, Mr. Ercelik was waving a small Palestinian flag and engaging with pro-Israel demonstrators, including by raising his middle finger. A pro-Israel demonstrator, the alleged victim in Mr. Ercelik's criminal matter, began doing the same — waving his pro-Israel flag and using insulting gestures and language. A physical altercation allegedly ensued. Mr. Ercelik's speech and conduct were, while perhaps juvenile,

purely politically motivated, and in no way antisemitic. Those who know him best attest to the fact that he is a young man of good moral character who harbors hate for no one. *See* Exhibit B (Letters of support on behalf of Mr. Ecerlik).

17.    Following that incident, on November 6, 2023, Mr. Ercelik was criminally charged in the Eastern Hampshire District Court in Belchertown, Massachusetts.    He was released on $250.00 bail.

18.    On April 16, 2025, Mr. Ercelik was notified, through his counsel who obtained a copy of a letter from ICE agents, that the U.S. Department of State had revoked his F-1 student visa and his B-2 tourist visa on March 31, 2025.

19.    As of the time of the filing of this petition, however, Mr. Ercelik's SEVIS record remains active. While Mr. Ercelik's F-1 visa has been revoked, the revocation of an F-1 visa does not constitute a failure to maintain F-1 student status.  DHS's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." *See* ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.  Rather, if the visa is revoked, the student is permitted to pursue his course of study in school, but upon departure, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States.  *See* Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016), https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

20.    Mr. Ercelik's criminal matter in the Eastern Hampshire District Court has been scheduled for a hearing and is expected to be resolved on April 17, 2025. Mr. Ercelik is required

to participate in his defense on that date and has always attended all of his scheduled court hearings and complied with all court orders of the Eastern Hampshire District Court.

21.     On the morning of April 16, 2025, officers identifying themselves as being of Homeland Security Investigations, a component of ICE, arrived at Mr. Ercelik's home in Sunderland, Massachusetts. They banged on his door for and created a scene for more than twenty minutes.  Those officers demanded entry into Mr. Ercelik's home. However, Mr. Ercelik asked them for a warrant and they indicated that they did not have one. Nevertheless, they demanded entry to Mr. Ercelik's home. At present, Mr. Ercelik is trapped in his home, afraid to leave for fear of arrest, detention, deportation, and, critically, that he will be unable to confront the charges against him on April 17, 2025.

22.     The DHS officers told Mr. Ercelik that he "is illegal here now," and that if he declined to surrender himself to those officers' custody, regardless of their lack of a warrant, they would ensure that Mr. Ercelik will be charged with a federal hate crime and spend many years in federal prison. The officers told Mr. Ercelik it would be much easier if he just went with them, and allowed them to deport him.  *See* Exhibit C (Affidavit of Melissa Celli, Mr. Ercelik's criminal defense attorney).

23.     Mr. Ercelik still declined to exit his home, and remains in his home at this time. Officers are waiting outside his home and he cannot leave his home without allowing himself to be subject to warrantless arrest, detention, and deportation.

24.     Mr. Ercelik's criminal counsel has actively worked to advance his matter in the Eastern Hampshire District Court so that it can be resolved and allow Mr. Ercelik to depart the country and return to Turkey as soon as possible. Mr. Ercelik is required to appear before the

Eastern Hampshire District Court, and a failure to appear would put him in violation of that Court's order.

25.     The fact that Mr. Ercelik's visa has been revoked does not, as DHS agents purported to inform Mr. Ercelik this morning, make him "illegal here now." Mr. Ercelik remains in valid immigration status.

26.     Mr. Ercelik wishes to respect the rule of law, as he has done throughout the pendency of his criminal charges, attending every hearing required and complying with all court terms and conditions. He is very willing to depart the country once his obligations with Eastern Hampshire District Court are complete.

27.     Mr. Ercelik fears that being detained by DHS would result in his removal from this District, and thus from the jurisdiction of the criminal court overseeing his case. In several recent high-profile incidents, DHS and its agents, including ICE and HSI agents, have detained international students and immediately transferred them to other states.

28.     On information and belief, Mr. Ercelik believes the same treatment awaits him.

29.     On information and belief, Mr. Ercelik believes that DHS and its agents, including ICE agents, would prevent him from upholding his obligations to the criminal court, by refusing to produce him for his Court date. This very month, Respondents have demonstrated their lack of respect for the rule of law in this manner, recently detaining a criminal defendant in Boston Municipal Court during his criminal proceedings and refusing to produce him for future dates.[1]

30.     Mr. Ercelik has remained in the United States thus far because he wishes to respect

---

[1] *"'Egregious conduct': Boston judge finds ICE agent in contempt of court after man detained mid-trial,"* Boston 25 News (April 1, 2025) available at https://www.boston25news.com/news/local/egregious-conduct-boston-judge-finds-ice-agent-contempt-court-after-man-detained-mid-trial

the orders of the court overseeing the criminal charges against him, which he wishes to confront and resolve. Were he not subject to the authority of the criminal court, he would have departed the country and returned home already. But, as he is aware that departing the United States would constitute fleeing the jurisdiction, he has not done so — out of a respect for the rule of law.

## CAUSES OF ACTION

### COUNT I

**Retaliation, Discrimination, and Prior Restraint in Violation of the First and Fifth Amendments**

31.     All of the foregoing allegations are repeated and realleged as though fully set forth herein.

32.     The First Amendment to the United States Constitution provides in part that "Congress shall make no law . . . abridging the freedom abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. Amend. I.

33.     The First Amendment protects past and future speech. *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009). The First Amendment applies to actions taken against people in custody, *Gill v. Pidlypchak*, 389 F.3d 379 (2d Cir. 2004), and those threatened with deportation, *Ragbir v. Homan*, 923 F.3d 53, 66 (2d Cir. 2019) (internal citations omitted), *cert. granted, remanded, and vacated sub nom. on other grounds*, *Pham v. Ragbir*, 141 S. Ct. 227 (2020). Speech on matters of public concern is entitled to the highest level of protection under the First Amendment. *See, e.g., Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1034 (1991).

34.     To state a First Amendment retaliation claim, a plaintiff must show that: '(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [the 's] exercise of that right; and (3) the defendant's actions caused [the

plaintiff] some injury.'" *Ragbir v. Homan*, 923 F.3d 53, 66 (2d Cir. 2019) (internal citations omitted), *cert. granted, remanded, and vacated sub nom. on other grounds*, *Pham v. Ragbir*, 141 S. Ct. 227 (2020).

35.     Mr. Ercelik's past speech, including the altercation at the pro-Israel demonstration at the University of Massachusetts Amherst, implicates matters of prominent public concern—Israel's war on Gaza and criticism of U.S. institutions that support Israel. These issues have garnered national attention, particularly since the Trump administration has vowed to crack down on student activists.

36.     Respondents have taken adverse actions against Mr. Ercelik that are motivated, at least in part, by his past and future exercise of First Amendment-protected speech. By revoking his visa and threatening him with arrest and detention, likely for removal proceedings, Respondents threaten Mr. Ercelik with the ultimate punishment for speaking out and discourage Mr. Ercelik from speaking out in the future. If ICE eventually deports Mr. Ercelik, Respondents will both prevent him from speaking and set a chilling example to other similarly-situated students.

37.     There is a substantial causal connection between Mr. Ercelik's protected speech and Respondents' adverse actions and threats to deport him. But for media attention drawn to Mr. Ercelik's case by two far-right organizations, to wit, Canary Mission and Betar, there is no other basis on which ICE would come to his house seeking to arrest and detain him other than as retaliation against his protected speech. *See* Exhibit D (Screenshots of X Posts by Betar, including a repost of a Canary Mission post specifically singling out Mr. Ecerlik).  Betar is an organization

which has explicitly stated its intent to ensure the deportation of pro-Palestinian student activists.
*Id.*

38.    Mr. Ercelik suffers severe and ongoing harm as a result of Respondents' actions, including the deprivation of his liberty as he remains confined to his home; the extreme anxiety and fear induced by knowing he may be found in violation of an order of the criminal court through no fault of his own; and the terror that he, like other pro-Palestinian student activists, could be torn away from this District at any moment and detained indefinitely by Respondents due to his speech.

39.    Respondents' actions against Mr. Ercelik on the basis of his protected speech do not serve a compelling state interest, and are not narrowly tailored to any legitimate government interest.

40.    As a result, this Court should declare that Respondents' retaliatory and discriminatory actions, including the threats of arrest and detention of Mr. Ercelik, violate the First Amendment and the Due Process Clause of the Fifth Amendment; order Respondents to cease and desist from threatening Mr. Ercelik and release him from their constructive custody under reasonable conditions of supervision; and enter an injunction restraining Respondents from transferring Mr. Ercelik  outside of this Court's jurisdiction,  unless Respondents demonstrate that such action is untainted by unlawful First Amendment retaliation and discrimination.

## COUNT II

### Sixth Amendment Right to Fair Criminal Hearing

41.    The Sixth Amendment to the U.S. Constitution guarantees rights to individuals accused of crimes in criminal prosecutions. U.S. Const. Amend. VI. Specifically, it ensures the right to a speedy and public trial, the right to an impartial jury, the right to be informed of the charges, the right to confront witnesses, the right to compulsory process for obtaining witnesses in

one's favor, and the right to legal counsel. *Id*.

42.    Absent the ability to appear in criminal court to face the charges against him, Mr. Ercelik's Sixth Amendment rights would be violated. If he is removed, he would be deprived of all ability to participate in his own defense.

## COUNT III

### Fifth Amendment Due Process Clause

43.    All of the foregoing allegations are repeated and realleged as though fully set forth herein.

44.    Mr. Ercelik's constructive detention violates his right to due process under the Fifth Amendment. U.S. Const. Amend. V.

45.    Petitioners for writs of habeas corpus need not be physically detained in order to be in "custody." *See Rumsfeld v. Padilla*, 542 U.S. 426, 437 (2004).

46.    Mr. Ercelik is under ICE's constructive custody. His liberty is constrained pursuant to the HSI officers currently waiting outside his home to take him to a detention center. Custody under § 2241 does not necessarily mean physical custody. *See e.g.*, *Mendonca v. INS*, 52. F. Supp.2d 155, 159 (D. Mass. 1999); *aff'd* 201 F.3d 427 (1st Cir. 1999).

47.    Mr. Ercelik is challenging the constitutionality of his custody. If he is taken into physical custody, he is likely to be removed from this District. Respondents' constructive detention of Petitioner is unjustified. Respondents have not demonstrated that Petitioner, who has complied with every term of the criminal court in his ongoing case, remains in valid immigration status, and who could have departed the U.S. at any point were it not for his respect for the rule of law and for the criminal courts of this Commonwealth, needs to be detained. The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether

their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).*See Zadvydas*, 533 U.S. at 690 (finding immigration detention must further the twin goals of (1) ensuring the noncitizen's appearance during removal proceedings and (2) preventing danger to the community). There is no credible argument that Petitioner cannot be safely released to his community.

48.    Petitioner's constructive custody is punitive and bears no "reasonable relation" to any legitimate purpose for detaining him. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972) ("nature and duration" of civil confinement must "bear some reasonable relation to the purpose for which the individuals is committed"); *Zadvydas*, 533 U.S. at 690 (finding immigration detention is civil and thus ostensibly "nonpunitive in purpose and effect"). His constructive detention violates due process limitations on civil detention. For these reasons, Petitioner's constructive detention violates the Due Process Clause of the Fifth Amendment.

## COUNT IV

## All Writs Act

49. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

50. The All Writs Act empowers courts to "issue all writs necessary and appropriate in aid of [its] respective jurisdiction [] and agreeable to the usages and principles of the law." 28 U.S.C. § 1651(a). The Court in *Michael v. INS*, 48 F.3d 657, referred to the All Writs Act as "a residual source of authority to issue writs that are not covered by statute[.]" 48 F.3d at 664.

51. Absent intervention from this Court, Mr. Ercelik is likely to be detained, and to be removed from this District, placing him in violation of his obligations to the Eastern Hampshire District Court. A failure to appear before that court would place him in contempt of court and cause a

warrant to issue for his arrest on that matter. M.G.L. c. 276 § 26. This is the sort of extraordinary circumstance requiring the Court's protective intervention under the All Writs Act.

**<u>PRAYER FOR RELIEF</u>**

Petitioner respectfully requests that the Court enter a judgment against Respondents and award the following relief:

A.    Assume jurisdiction over this matter;

B.    Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

C.    Issue a writ of habeas corpus preventing Mr. Ercelik's detention and removal;

D.    Enjoin Respondents from removing Mr. Ercelik from this District;

E.    Enjoin Respondents from preventing Mr. Ercelik from facing the charges against him in person at any future hearings in Eastern Hampshire District Court;

F.    Order Respondents to permit Mr. Ercelick to depart the United States voluntarily immediately following the conclusion of the pending criminal matter;

G.    Issue a writ under the All Writs Act preventing his removal from the United States;

H.    Award reasonable attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) or any other applicable provision of law; and

I.    Order all other relief that is just and proper.

Dated: 04/16/2025                    Respectfully submitted:

                                     */s/ Rachel M. Self*
                                     Rachel M. Self
                                     RACHEL M. SELF, P.C.
                                     6 Beacon Street, Suite 825
                                     Boston, MA 02108
                                     (617) 742-0191 (Office)

(617) 742-0194 (Fax)
rms@attorneyself.com
BBO No. 660243