## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EFE ERCELIK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-11007 |
| | ) | |
| PATRICIA HYDE, Acting Director of | ) | **FIRST AMENDED PETITION FOR** |
| Boston Field Office, U.S. Immigration and | ) | **WRIT OF HABEAS CORPUS** |
| Customs Enforcement; KRISTI NOEM, | ) | |
| Secretary of the U.S. Department of | ) | |
| Homeland Security; PAMELA BONDI, | ) | |
| Attorney General of the United States; in | ) | |
| their official capacities, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

_____

## <u>INTRODUCTION</u>

1.      Efe Ercelik ("Mr. Ercelik") is a twenty-two year-old young man and citizen of Turkey, who is enrolled at Hampshire College pursuant to an F-1 student visa. He is and has been in the constructive custody of Respondent U.S. Department of Homeland Security ("DHS") since the morning of April 16, 2025, when DHS agents, including from U.S. Immigration and Customs Enforcement ("ICE") and Homeland Security Investigations ("HSI") arrived at his home, banged on his door, and demanded entry despite possessing no warrant for his arrest. At the time of this filing, Mr. Ercelik remains confined to his home in Sunderland, Massachusetts because DHS agents have been and may still be parked outside waiting to arrest him, and he fears arrest by DHS agents, at least in part based on his views about the situation in Palestine.

2.      Mr. Ercelik does not want to remain in the United States any longer than is necessary for him to participate in his own defense against criminal charges currently pending in

the Eastern Hampshire District Court in Belchertown, Massachusetts, pursuant to his Sixth Amendment rights to confront those criminal charges. The parties in that case have reached a plea agreement, and Mr. Ercelik is required to attend the Eastern Hampshire District Court in person on May 7, 2025 to present that agreement to the court and resolve the matter. If Mr. Erecelik is able to make it to the Eastern Hampshire District Court on May 7 without interference by ICE and the Court accepts the parties' proposed agreed-upon resolution, Mr. Ercelik would then seek the Court's permission to immediately depart the country and return to Turkey. *See* Exh. 1 (Receipt and itinerary for Turkish Airlines ticket departing May 7, 2025 from Boston to Istanbul).

3.      Absent an order from this Court, on information and belief and based on DHS's actions in similar cases, if Mr. Ercelik leaves his apartment and especially if he goes to the Eastern Hampshire District Court for his scheduled May 7, 2025 hearing, DHS will take Mr. Ercelik into DHS custody, detain him, and remove him from this District. In so doing, DHS would deprive Mr. Ercelik of his right to participate in his own defense in his criminal matter in violation of his rights under the Sixth Amendment.

4.      Mr. Ercelik seeks immediate relief from this Court enjoining DHS from removing him from this District or from the United States, enjoining DHS from preventing him from attending the May 7, 2025 hearing in person, and ordering Respondents to release him from their immediate and constructive custody to allow him to immediately depart the country following that hearing.

## **JURISDICTION**

5.      This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq* and the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq*.; and 5 U.S.C. § 552 *et. seq.*

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause); and 28 U.S.C. § 1346(a)(2), as this case is a civil action arising under the Constitution. The Court may grant declaratory and injunctive relief pursuant to 5 U.S.C. §§ 705-06, 28 U.S.C. § 1651, 28 U.S.C. §§ 2201–02, 28 U.S.C. § 2241, and its equitable powers. The government has waived its sovereign immunity pursuant to 5 U.S.C. § 702 and 5 U.S.C. § 552(a)(4)(B).

## VENUE

7.      Venue is proper under 28 U.S.C. § 1391(b) because Mr. Ercelik is a resident of Massachusetts. Venue is also proper because a substantial part of the events giving rise to the claim occurred in the District of Massachusetts: namely, DHS agents, including ICE agents have camped outside Mr. Ercelik's residence in Massachusetts to detain him if he exits his home.

## REQUIREMENTS OF 28 U.S.C. § 2243

8.      The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

9.      Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

## PARTIES

10.     Plaintiff Efe Ercelik is a native and citizen of Turkey and a resident of Sunderland, Massachusetts.

11.     Respondent Patricia Hyde is sued in her official capacity as the Acting Director of the Boston Field Office of U.S. Immigration and Customs Enforcement. Respondent Hyde is the legal custodian of Mr. Ercelik and has authority to instruct ICE officers to release him from constructive and/or physical custody.

12.     Respondent Kristi Noem is sued in her official capacity as the Secretary of the U.S. Department of Homeland Security (DHS). In this capacity, Respondent Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees U.S. Immigration and Customs Enforcement, the component agency responsible for Petitioner's custody. Respondent Noem is a legal custodian of Mr. Ercelik.

13.     Respondent Pamela Bondi is sued in her official capacity as the Attorney General of the United States. In this capacity, she directs agencies within the United States Department of Justice, including the Executive Office for Immigration Review (EOIR), which houses the immigration courts and Board of Immigration Appeals. Respondent Bondi is responsible for the administration of immigration laws pursuant to 8 U.S.C. § 1103(g) and oversees EOIR. Respondent Bondi is a legal custodian of Petitioner.

## LEGAL BACKGROUND

### Visa revocation vs. termination of student status

14.     The revocation of an F-1 visa does not constitute a failure to maintain F-1 student status and, therefore, cannot serve as a basis for termination of F-1 student status. 8 C.F.R. § 214.1(d). *Jie Fang v. Dir. United States Immigration & Customs Enforcement,* 935 F.3d 172, 185

4

n.100 (3d Cir. 2019). Under 8 C.F.R. § 214.1(d), DHS can terminate F-1 student status only when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination.

15.    In other words, under this regulation, the revocation of an F-1 visa does not provide a basis to terminate F-1 student status. DHS's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." *See* ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.    Rather, if the visa is revoked, the student is permitted to pursue his course of study in school, but upon departure, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States. *See* Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016), available at https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

16.    If DHS seeks to terminate F-1 student status (and then reflect said termination in the SEVIS system) after—or independent of—revocation of an F-1 visa, DHS must comply with 8 C.F.R. § 214.1(d). *See Jie Fang*, 935 F.3d at 185 n.100. DHS cannot unilaterally terminate an individual's F-1 student status outside those parameters The U.S. Department of State's Foreign Affairs Manual also instructs consular officers, when practicable, to notify a visa holder of the intent to revoke and to allow the individual to respond prior to revocation. *See* 9 FAM 403.11.

**Grounds of Deportability**

17.     While a visa revocation can be charged as a ground of deportability in removal proceedings, deportability can be contested in such proceedings. See 8 U.S.C. § 1227(a)(1)(B); 8 U.S.C. § 1201(i). The Immigration Judge may also dismiss removal proceedings where a visa is revoked, so long as a student is able to remain in valid status or otherwise reinstated to F-1 student status. See 8 C.F.R. § 1003.18(d)(ii)(B).

18.     Individuals in removal proceedings are eligible to be granted pre-conclusion voluntary departure upon requesting such departure at the master calendar hearing at which the case is initially calendared for a merits hearing, if they: make no additional requests for relief; concede removability; waive appeal of all issues; and have not been convicted of an aggravated felony as described in 8 U.S.C. § 1101(a)(43) and are not deportable under 8 U.S.C. § 1227(a)(4) (grounds including those related to espionage, sabotage, endangering national or public security, activities aiming to violently oppose or overthrow the government of the United States). 8 CFR § 1240.26(b).

## **FACTS**

19.     Mr. Ercelik is a twenty-two year-old citizen of Turkey. He was accepted into his program of study at the University of Massachusetts Amherst and entered the United States on an F-1 student visa to enroll in that program beginning in the Spring of 2022.  He later transferred to Hampshire College and is in valid student status with a valid Certificate of Eligibility for Nonimmigrant Student Status (Form I-20) and valid Student and Exchange Visitor (SEVIS) status as of April 22, 2025. *See* Exh. 2 (Form I-20 and SEVIS confirmation screen dated April 22, 2025).

20.     On November 3, 2023, Mr. Ercelik walked past a group of students attending a political event on the University of Massachusetts Amherst campus. The event was a pro-Israel demonstration. Like countless people in this country and around the world, Mr. Ercelik was

strongly opposed to the State of Israel's treatment of Palestinians, especially Israel's actions in the wake of the October 7 attack on Israel by Hamas. Mr. Ercelik expressed his political view in a manner that was crude – by raising his middle fingers to the pro-Israel demonstrators – but certainly protected by the First Amendment. Indeed, upon information and belief, in one police report documenting this, Mr. Ercelik was correctly referred to as a counter demonstrator and his conduct correctly characterized as free speech. After displaying his political opposition to the pro-Israel event, Mr. Ercelik then went inside a nearby building, where he continued to express his political views by waiving a Palestinian flag and exhibiting his middle fingers to the crowd outside through a window that looked out on the demonstration.

21.     Witnesses described that while Mr. Ercelik was inside the building, a UMass student who was a pro-Israel demonstrator gestured toward and waived an Israeli flag at Mr. Ercelik through the window. At some point, Mr. Ercelik walked out of the building, at which time he and that pro-Israel demonstrator allegedly had a physical altercation. That student (Alleged Victim 1, "AV1") has alleged that Mr. Ercelik struck him with his fists, kicked him, grabbed his Israeli flag, and later destroyed the flag. Another pro-Israel demonstrator who worked at UMass (Alleged Victim 2, "AV2") intervened to break up the altercation and later alleged that she was struck in the hand while intervening.

22.     According to the report of the responding police officer, he observed no marks or bruising on either alleged victim. The officer also noted that both alleged victims declined medical attention. The only video that has emerged of the actual physical altercation shows AV2 in the middle of AV1 and Mr. Ercelik while AV1 and AV2 push Mr. Ercelik backwards. In this video, Mr. Ercelik does not strike either AV nor does Mr. Ercelik say anything that could be deemed anti-Semitic.

23.     Mr. Ercelik's speech and conduct, while perhaps crude and immature, were politically motivated, and in no way antisemitic. There is an important distinction between expressing opposition to the policies and practices of the State of Israel, which are political views that many Jewish people hold,[1] and expressing antisemitic beliefs about the Jewish people. These very different expressions are often conflated, as they have been in this case. Those who know Mr. Ercelik best attest to the fact that he is a young man of good moral character who harbors hate for no one. *See* Exh. 3 (Letters of support on behalf of Mr. Ecerlik). In short, the dispute in this incident was a conflict over opposing political views, not over feelings about any religion.

24.     Following the incident, on November 6, 2023, Mr. Ercelik was criminally charged in the Eastern Hampshire District Court in Belchertown, Massachusetts.  He was released on $250.00 bail.

25.     On the morning of April 16, 2025, officers identifying themselves as being of HSI, a component of ICE, arrived at Mr. Ercelik's home in Sunderland, Massachusetts. They banged on his door and created a scene for more than twenty minutes.  Those officers demanded entry into Mr. Ercelik's home. However, Mr. Ercelik asked them for a warrant and they indicated that they did not have one. Mr. Ercelik refused to consent to allow the to enter his home.  To date neither Mr. Ercelik nor undersigned counsel has been provided with a copy of any warrant.

26.     The DHS officers told Mr. Ercelik that he "is illegal here now," and that if he declined to surrender himself to those officers' custody, regardless of their lack of a warrant, they would ensure that Mr. Ercelik will be charged with a federal hate crime and spend many years in

---

[1] As one example, Professor Omer Bartov – a native Jewish Israeli, former Israel Defense Forces soldier, and a leading scholar of Holocaust and Genocide Studies at Brown University – has not only opposed Israel's war in Gaza, but has referred to it as "genocide." See Interview with Christiane Amanpour, located at https://www.cnn.com/2024/12/19/Tv/video/amanpour-bartov-omer (last accessed April 22, 2025).

federal prison. The officers told Mr. Ercelik it would be much easier if he just went with them and allowed them to deport him. *See* Exh. 4 (Affidavit of Melissa Allen Celli, Esq., and U.S. Department of State Memo for ICE concerning purported visa revocations).

27.     Mr. Ercelik still declined to exit his home, and remains in his home at this time. He cannot leave his home without risking warrantless arrest, detention, and deportation.

28.     On that same date, April 16, 2025, Mr. Ercelik's defense counsel was permitted to photograph a letter, shown to her by the ICE agents at Mr. Ercelik's home, stating the U.S. Department of State had revoked his F-1 student visa and his B-2 tourist visa on March 31, 2025. *See* Exh. 4. Mr. Ercelik has never received any other notice of his visa being revoked, nor has his counsel received any further evidence demonstrating his visa has actually been revoked properly pursuant to regulation. *See* Exh. 7 (9 FAM 403.11 NIV Visa Revocation).

29.     As of the time of the filing of the original petition and the amended petition, however, Mr. Ercelik's SEVIS record remains active. *See* Exh. 2.

30.     Until recently, ICE has exhibited no interest in Mr. Ercelik's case. It was only after media attention drawn to Mr. Ercelik's case by two far-right organizations, to wit, Canary Mission and Betar, that ICE showed up at his home. *See* Exh. 5 (Screenshots of X Posts by Betar, including a repost of a Canary Mission post specifically singling out Mr. Ecerlik). Betar is an organization which has explicitly stated its intent to ensure the deportation of pro-Palestinian student activists. *Id.*

31.     Mr. Ercelik's defense counsel has actively worked to advance his matter in the Eastern Hampshire District Court so that it can be resolved and allow Mr. Ercelik to depart the country and return to Turkey as soon as possible.

32.    After ICE made clear its intention to detain Mr. Ercelik, Mr. Ercelik's defense counsel filed a motion for him to attend his then-scheduled April 17, 2025 change of plea hearing by Zoom, but that request was denied with prejudice. Thus, Mr. Ercelik is now required to attend the hearing scheduled in his criminal matter in the Eastern Hampshire District Court which has been scheduled for May 7, 2025 (on which date the case is expected to be resolved). *See* Exh. 6 (Correspondence from Paul Rudolf, Esq., and Tender of Plea Sheet). Mr. Ercelik is required to participate in his defense on that date and has always attended all of his scheduled court hearings and complied with all court orders of the Eastern Hampshire District Court.

33.    Mr. Ercelik has reached a plea agreement with the Commonwealth in this matter, which the parties are now scheduled to present to the Court on May 7, 2025.  The agreement the parties will propose to the Court is as follows: Mr. Ercelik will plead guilty to three misdemeanors – two counts of assault and battery for the an unwanted touching of AV1 and AV2, and one count of disorderly conduct; on these three misdemeanors, Mr. Ercelik will be placed on one year of administrative probation, with no travel restrictions and the only condition being that Mr. Ercelik must stay away from and have no contact with AV1 and AV2; on the charge of assault and battery with the intent to intimidate, Mr. Ercelik will not plead guilty but instead will be placed on one year of pretrial probation (same conditions) such that the charge will be dismissed at the end of a successful probationary period; the remaining charges will be nolle prossed. *See* Exh. 6.

34.    At present, Mr. Ercelik is afraid to leave for fear of arrest, detention, deportation, and, critically, that he will be unable to confront the charges against him on May 7, 2025. A failure to appear would put him in violation of that Court's order.

35.    Mr. Ercelik wishes to respect the rule of law, as he has done throughout the pendency of his criminal charges, attending every hearing required and complying with all court

terms and conditions. He will depart the country once his obligations with Eastern Hampshire District Court are complete as evidenced by the airline ticket he has purchased. *See* Exh. 1.

36.    Mr. Ercelik's fears that detention by DHS would prevent him from appearing at the May 7, 2025 hearing are well-founded and supported by recent events. In several recent high-profile incidents, DHS and its agents, including ICE and HSI agents, have detained international students and immediately transferred them to other states.[2]

37.    Upon information and belief, Mr. Ercelik believes the same treatment awaits him.

38.    Upon information and belief, Mr. Ercelik believes that DHS and its agents, including ICE agents, would prevent him from upholding his obligations to the criminal court, by refusing to produce him for his Court date. This month, DHS officers have demonstrated their lack of respect for the rule of law in this manner, recently detaining a criminal defendant in Boston Municipal Court during his criminal proceedings and refusing to produce him for future dates.[3]

39.    Mr. Ercelik has remained in the United States thus far because he wishes to respect the orders of the court overseeing the criminal charges against him, which he wishes to confront and resolve. Were he not subject to the authority of the criminal court, he would have departed the country and returned home already. But, as he is aware that departing the United States would

---

[2] *See* "Tufts student who was detained by ICE, moved to Louisiana, releases first statement," Boston 25 News (April 3, 2025) available at https://www.boston25news.com/news/local/tufts-student-who-was-detained-by-ice-moved-louisiana-releases-first-statement/ (last accessed April 23, 2025); *see also* "Palestinian activist Mahmoud Khalil, SIPA '24, moved to detention facility in Louisiana, according to ICE database," Columbia Spectator (March 10, 2025) available at https://www.columbiaspectator.com/news/2025/03/10/palestinian-activist-mahmoud-khalil-sipa-24-moved-to-detention-facility-in-louisiana-according-to-ice-database/ (last accessed April 23, 2025).

[3] *"'Egregious conduct': Boston judge finds ICE agent in contempt of court after man detained mid-trial,"* Boston 25 News (April 1, 2025) available at https://www.boston25news.com/news/local/egregious-conduct-boston-judge-finds-ice-agent-contempt-court-after-man-detained-mid-trial (last accessed April 23, 2025).

constitute fleeing the jurisdiction, he has not done so — out of a respect for the rule of law.

## CAUSES OF ACTION

### COUNT I

**Retaliation, Discrimination, and Prior Restraint in Violation of the First and Fifth Amendments**

40.    All of the foregoing allegations are repeated and realleged as though fully set forth herein.

41.    The First Amendment to the United States Constitution provides in part that "Congress shall make no law . . . abridging the freedom abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. Amend. I.

42.    The First Amendment protects past and future speech. *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009). The First Amendment applies to actions taken against people in custody, *Gill v. Pidlypchak*, 389 F.3d 379 (2d Cir. 2004), and those threatened with deportation, *Ragbir v. Homan*, 923 F.3d 53, 66 (2d Cir. 2019) (internal citations omitted), *cert. granted, remanded, and vacated sub nom. on other grounds*, *Pham v. Ragbir*, 141 S. Ct. 227 (2020). Speech on matters of public concern is entitled to the highest level of protection under the First Amendment. *See, e.g., Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1034 (1991).

43.    To state a First Amendment retaliation claim, a plaintiff must show that: '(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [the 's] exercise of that right; and (3) the defendant's actions caused [the

plaintiff] some injury.'" *Ragbir*, 923 F.3d at 66. Retaliatory enforcement implicates First Amendment protections, even in the immigration context. *Id.* at 71.

44.    Mr. Ercelik's past speech, including his speech at the November 3, 2023 pro-Israel demonstration at the University of Massachusetts Amherst, implicates matters of prominent public concern—the State of Israel's historical treatment of Palestinians and its specific response to the October 2023 Hamas attack on Israel.

45.    Respondents have taken adverse actions against Mr. Ercelik that are motivated, at least in part, by his past and future exercise of First Amendment-protected speech. By revoking his visa and threatening him with arrest and detention, likely for removal proceedings, Respondents threaten Mr. Ercelik with the ultimate punishment for speaking out and discourage Mr. Ercelik from speaking out in the future. If ICE eventually deports Mr. Ercelik, Respondents will both prevent him from speaking and set a chilling example to other similarly-situated students.

46.    There is a substantial causal connection between Mr. Ercelik's protected speech and Respondents' adverse actions and threats to arrest, detain, and/or deport him. The case has been ongoing since November 2023.  ICE had never exhibited any interest in Mr. Ercelik's case until shortly after Mr. Ercelik's information was posted on a social media platform by an organization seeking to promote the deportation of pro-Palestinian activists. *See* Exh. 5.

47.    Mr. Ercelik suffers severe and ongoing harm as a result of Respondents' actions, including the deprivation of his liberty as he remains confined to his home; the extreme anxiety and fear induced by knowing he may be found in violation of an order of the criminal court through

no fault of his own; and the terror that he, like other pro-Palestinian student activists, could be torn away from this District at any moment and detained indefinitely by Respondents due to his speech.

48.     Respondents' actions against Mr. Ercelik on the basis of his protected speech do not serve a compelling state interest, and are not narrowly tailored to any legitimate government interest. There can be no government interest in detaining Mr. Ercelik, who is currently in valid immigration status.  The only "government interest" furthered by the detention of Mr. Ercelik in this case is the government's apparent interest in suppressing the protected political speech of people like Mr. Ercelik.

49.     The plea agreement reached in Mr. Ercelik's criminal matter will not render him deportable. *See* Exh. 6; *see* 8 U.S.C. § 1227(a)(2). The only ground of deportability which can be charged against Mr. Ercelik is his visa revocation. *See* 8 U.S.C. § 1227(a)(1)(B). But there is no reason, other than retaliation, for Respondents to place Mr. Ercelik in proceedings to pursue that charge; Mr. Ercelik will be eligible to request pre-conclusion voluntary departure in any removal proceedings. *See* 8 CFR § 1240.26(b). The only reason to detain Mr. Ercelik and place him in removal proceedings before allowing him to take voluntary departure, rather than allowing him to leave the U.S. at his own expense and under his own power, is punitive retaliation for his protected speech.

50.     As a result, this Court should declare that Respondents' retaliatory and discriminatory actions, including the threats of arrest and detention of Mr. Ercelik, violate the First Amendment and the Due Process Clause of the Fifth Amendment; order Respondents to cease and desist from threatening Mr. Ercelik and release him from their constructive custody under reasonable conditions of supervision; and enter an injunction restraining Respondents from transferring Mr. Ercelik  outside of this Court's jurisdiction,  unless Respondents demonstrate that

such action is untainted by unlawful First Amendment retaliation and discrimination.

## COUNT II

### Sixth Amendment Right to Fair Criminal Hearing

51.     All of the foregoing allegations are repeated and realleged as though fully set forth herein.

52.     The Sixth Amendment to the U.S. Constitution guarantees rights to individuals accused of crimes in criminal prosecutions. U.S. Const. Amend. VI. Specifically, it ensures the right to a speedy and public trial, the right to an impartial jury, the right to be informed of the charges, the right to confront witnesses, the right to compulsory process for obtaining witnesses in one's favor, and the right to legal counsel. *Id.*

53.     Noncitizens are entitled to Sixth Amendment protections in criminal proceedings, including the criminal proceeding pending against Mr. Ercelik in Eastern Hampshire District Court.

54.     Mr. Ercelik has a Sixth Amendment right in his criminal proceedings to appear in criminal court to face the charges against him.

55.     Absent an order from this Court ensuring his ability to appear in person, Mr. Ercelik's Sixth Amendment rights implicated in his case before the Eastern Hampshire District Court would be violated. Likewise, if he is removed before the matter is resolved, Mr. Ercelik would be deprived of all ability to participate in his own defense. If he is taken into detention, he would just as likely be deprived of all ability to participate in his defense and his right to a speedy trial, as demonstrated by the Respondents' pattern and practice of failing to make alien detainees available for criminal matters. *See Doe v. Department of Homeland Security,* No. 03:24-cv-00259 Doc. 77 (W. D. Penn. January 31, 2025) (order granting preliminary injunction in challenge to

ICE's policy and practice of refusing to allow noncitizens detained at Moshannon Valley Processing Center with unresolved criminal charges in New Jersey's courts to virtually participate in their criminal legal proceedings). There is no compelling government interest in depriving Mr. Ercelik of his ability to appear in criminal court; indeed, it is profoundly against the interests of the administration of justice in the Commonwealth of Massachusetts to prevent the resolution of a criminal matter in its courts.

56.     The Sixth Amendment to the U.S. Constitution guarantees defendants in criminal prosecutions the right to a speedy and public trial, compulsory process, assistance of counsel, and confrontation. By preventing Mr. Ercelik from participating in his criminal matters, Respondents are denying him his rights under the Confrontation Clause to confront his accusers and hear testimony regarding his alleged criminal conduct, and denying his his rights to a speedy trial as his criminal matter has been subject to delays because he has no means of making an appearance and participating.

57.     Courts have consistently found that "[A] Defendant's absence from the District … where he faces charges and where he allegedly committed the charged offense, interferes with his ability to consult with counsel and prepare a defense, in violation of the Sixth Amendment, and that Defendant's inability to do so is solely attributable to the government." *United States v. Castillo*, 537 F. Supp. 3d 120, 124 (D. Mass. 2021); *see also United States v. Resendiz-Guevara*, 145 F. Supp. 3d 1128, 1138 (M.D. Fla. 2015) ("It is clear that Defendant's deportation presents a clear challenge … to his ability to consult with counsel, to review the evidence against him and to prepare a defense to the charge."); *United States v. Ferreira-Chavez*, No. 1:20-cr-00145, 2021 WL 602822, at *4 (D. Idaho Feb. 12, 2021) (finding that the defendant's removal "severely curtailed" his "ability to meaningfully communicate with counsel or prepare his defense"). Even if

Respondents should decide to allow Mr. Ercelik to return to participate in his criminal case at some point in the future, that does not explain "how a delayed trial would not itself violate his Sixth Amendment rights, as well as the Speedy Trial Act." *Castillo*, 537 F. Supp. 3d at 124.

58.     Respondents will not permit Mr. Ercelik to attend his criminal hearing on May 7, 2025 so long as he remains in their constructive custody. Upon information and belief, Respondents intend to arrest Mr. Ercelik as soon as he leaves his home. The violation of his Sixth Amendment right to participate in his criminal case is clear, as is the harm that would flow from such a violation — preventing him from resolving a criminal matter in which all parties have already reached an agreement, and all that stands between the disposition of the case is Mr. Ercelik's presence at a hearing.

## COUNT III

### Fifth Amendment Due Process Clause

59.     All of the foregoing allegations are repeated and realleged as though fully set forth herein.

60.     Mr. Ercelik's constructive detention violates his right to due process under the Fifth Amendment. U.S. Const. Amend. V.

61.     Petitioners for writs of habeas corpus need not be physically detained in order to be in "custody." *See Rumsfeld v. Padilla*, 542 U.S. 426, 437 (2004).

62.     Mr. Ercelik is under ICE's constructive custody. His liberty is constrained pursuant to the HSI officers currently waiting outside his home to take him to a detention center. Custody under § 2241 does not necessarily mean physical custody. *See e.g.*, *Mendonca v. INS*, 52. F. Supp.2d 155, 159 (D. Mass. 1999); *aff'd* 201 F.3d 427 (1st Cir. 1999). The habeas statute "does not attempt to mark the boundaries of 'custody' nor in any way other than by use of that word

attempt to limit the situations in which the writ can be used." *Jones v. Cunningham*, 371 U.S. 236, 238 (1963). The "in custody" requirement for habeas corpus petitions should be liberally construed. *Maleng v. Cook*, 490 U.S. 488, 492 (1989); *see also Valdez v. Hulihan*, 640 F.Supp.2d 514, 515 (S.D.N.Y.2009). "The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." *Harris v.. Nelson*, 394 U.S. 286, 291 (1969). The Supreme Court has "consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms ... or scholastic procedural requirements." *Hensley v. Mun. Court, San Jose Milpitas Judicial Dist., Santa Clara Cnty., Cal.*, 411 U.S. 345, 350 (1973).

63.     Mr. Ercelik is challenging the constitutionality of his custody. If he is taken into physical custody, he is likely to be precluded from attending his criminal hearing. Respondents' constructive detention of Mr. Ercelik is unjustified. Respondents have not demonstrated that Mr. Ercelik, who has complied with every term of the criminal court in his ongoing case, remains in valid immigration status, and who could have departed the U.S. at any point were it not for his respect for the rule of law and for the criminal courts of this Commonwealth, needs to be detained. The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). *See Zadvydas*, 533 U.S. at 690 (finding immigration detention must further the twin goals of (1) ensuring the noncitizen's appearance during removal proceedings and (2) preventing danger to the community). There is no credible argument that Mr. Ercelik cannot be safely released to his community.  In fact he has been existing safely in the community with no further incident, complying with all orders of the court, since the events of the fall of 2023.

64.     Mr. Ercelik's constructive custody is punitive and bears no "reasonable relation" to any legitimate purpose for detaining him. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972) ("nature and duration" of civil confinement must "bear some reasonable relation to the purpose for which the individuals is committed"); *Zadvydas*, 533 U.S. at 690 (finding immigration detention is civil and thus ostensibly "nonpunitive in purpose and effect"). His constructive detention violates due process limitations on civil detention. For these reasons, Mr. Ercelik's constructive detention violates the Due Process Clause of the Fifth Amendment.

## COUNT IV

### All Writs Act

65. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

66. The All Writs Act empowers courts to "issue all writs necessary and appropriate in aid of [its] respective jurisdiction [] and agreeable to the usages and principles of the law." 28 U.S.C. § 1651(a). The Court in *Michael v. INS*, 48 F.3d 657, referred to the All Writs Act as "a residual source of authority to issue writs that are not covered by statute[.]" 48 F.3d at 664.

67. Absent intervention from this Court, Mr. Ercelik is likely to be detained, and to be removed from this District, placing him in violation of his obligations to the Eastern Hampshire District Court. A failure to appear before that court would place him in contempt of court and cause a warrant to issue for his arrest on that matter. M.G.L. c. 276 § 26. This is the sort of extraordinary circumstance requiring the Court's protective intervention under the All Writs Act.

### PRAYER FOR RELIEF

Mr. Ercelik respectfully requests that the Court enter a judgment against Respondents and award the following relief:

A.      Assume jurisdiction over this matter;

B.    Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

C.    Issue a writ of habeas corpus enjoining Respondents from preventing Mr. Ercelik from facing the charges against him in person at any future hearings in Eastern Hampshire District Court;

D.    Enjoin Respondents from preventing Mr. Ercelick from departing the United States voluntarily immediately following the conclusion of the pending criminal matter;

E.    Award reasonable attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) or any other applicable provision of law; and

F.    Order all other relief that is just and proper.


Dated: 04/23/2025                Respectfully submitted:

                                 */s/ Rachel M. Self*
                                 Rachel M. Self
                                 RACHEL M. SELF, P.C.
                                 6 Beacon Street, Suite 825
                                 Boston, MA 02108
                                 (617) 742-0191 (Office)
                                 (617) 742-0194 (Fax)
                                 rms@attorneyself.com
                                 BBO No. 660243