[CASE HEADING]

Affidavit of Melissa Allen Celli

I, Melissa Allen Celli, do hereby depose and state as follows:

1. On the morning of April 16, 2025, I learned that agents from Immigrations and Customs Enforcement ("ICE") were at an apartment complex located at 653 Amherst Road, Building 5, Sunderland, MA. My law partner, Paul Rudof, asked me and another of our law partners, Molly Ryan Strehorn, to go to the apartment complex because one of his clients, Elfe Ercelik, lived in the building.

2. I arrived at the apartment complex shortly after 10:00 am that same morning.

3. The complex is large, consisting of several large buildings. When I entered the complex, there was a large black SUV with tinted windows at the entrance of the complex. I proceeded to Building 5, where my colleague Molly Ryan Strehorn was already waiting. She pointed out a sedan with tinted windows.

4. I approached that car to see whether it was occupied and an agent emerged. He was wearing a blue windbreaker with writing ("HSI") and was carrying a holstered firearm. We introduced ourselves and I told him that I represent Mr. Ercelik. In turn, I learned that his name was Daniel Yon, a Special Agent with Homeland Security in Springfield, MA. He showed me his credentials and gave me a business card.

5. Agent Yon explained that Mr. Ercelik's visa had been revoked and that he (Agent Yon) had an administrative warrant and a letter from the Secretary of State. He showed me the administrative warrant and allowed me to take a copy of it. A true and accurate copy is attached to this affidavit. He did not show me the letter from the Secretary of State.

6. After that brief interaction, I went back to speak with Attorney Strehorn and after a short time, several other vehicles approached. There were at least four vehicles, all with tinted windows, parked immediately in front of the apartment building entrance, with another possible two vehicles within eyeshot.

7. When those vehicles parked, one man wearing a khaki baseball cap with an American flag in shades of khaki got out of his car and appeared to make a phone call. That person never approached Attorney Strehorn or I.

8. Two other agents, however, both emerged from vehicles and approached us along with Agent Yon. Attorney Strehorn explained that she was on the phone with other attorneys, who would also be able to hear the interaction. She held her phone up so that the others on the call could hear the entire interaction.

9. Neither of the two new agents showed us credentials or provided us with business cards. I cannot remember their names and am not sure whether either provided their names. One was wearing a blue windbreaker with lettering on it. The other was wearing a khaki camouflage tactical vest.

10. They again informed us that they had an administrative warrant for Mr. Ercelik. They told us that Mr. Ercelik's visa had been revoked as a result of his arrest and that he is now out of status. They said that he is here "illegally" as of today.

11. I explained that I understood what they had told us, but that without a judicial warrant, they could not go into Mr. Ercelik's apartment.

12. They acknowledged that they knew that, but maintained that Mr. Ercelik "would be leaving with [them] today" and asked me how I thought this would play out.

13. I told them that neither Attorney Strehorn nor I are immigration attorneys, so we could not answer that question. We further told them that we were working in consultation with an immigration attorney and that, in fact, the immigration attorney was on the phone that Attorney Strehorn was holding up.

14. They informed us that the federal government might be seeking an indictment against Mr. Ercelik, for a hate crime but that that would not happen if Mr. Ercelik just left with them.

15. I asked the agent whether he was suggesting a quid pro quo: that if Mr. Ercelik failed to present himself for ICE detention that they would be seeking an indictment and the agent denied that.

16. I said that, in my experience, district attorneys are not eager to give defendants up to immigration because they will then lose the ability to prosecute the case. The agent stated that the parties seeking the indictment were the US Attorney and the FBI and that they would not stand in the way

of deportation, but that they would detain Mr. Ercelik if the case was indicted.

17. When I saw another car approaching, I asked the agents how many of them were there and received a response that I took as aggressive in nature asking why I needed to know that. I explained that there seemed to be several of them and that Attorney Strehorn and I were just two middle aged women. I was just curious. Attorney Strehorn gave them a business card and I wrote my name on it as well.

18. My memory is that the interaction with the three ICE agents lasted approximately five to ten minutes.

19. After consulting with attorneys Paul Rudof and Rachel Self, Attorney Strehorn and I left the apartment complex. It was approximately 10:35 am when we left.

20. At that time, it did not appear that any of the ICE agents had left. None showed any signs of preparing to leave.

Signed under the pains and penalties of perjury this 16th day of April 2025.

/s/Melissa Allen Celli
Melissa Allen Celli
BBO No. 666171
Strehorn, Ryan & Hoose
100 Main Street, 3rd Floor
Northampton, MA 01060
mcelli@strhlaw.com



United States Department of State

Washington, DC  20520

SENSITIVE BUT UNCLASSIFIED                    April 9, 2025

**Memo for ICE – Andre R. Watson, Assistant Director, National Security Division**

FROM:       CA/VO – Stuart R. Wilson, Deputy Assistant Secretary, Visa Services

SUBJECT:    (SBU) Revocation of Visas – Efe ERCELIK

(SBU) On March 31, 2025, in response to a request from DHS/ICE and the assessment from DHS/ICE that Efe ERCELIK had been involved in antisemitic activities that "involvement in antisemitic activities, his hateful rhetoric against Jewish students, and his violent attack of Jewish student on campus may indicate support for a designated terrorist organization and undermine U.S. foreign policy by creating a hostile environment for Jewish students" including assault of a Jewish student on campus, the Bureau of Consular Affairs approved revocation on April 9, effective immediately, of the B1/B2 visa (Visa Foil L7718116), and the F-1 visa (Visa Foil R0482935) of ERCELIK (DPOB: 03-SEP-2002, Turkey) pursuant to authority in section 221(i) of the Immigration and Nationality Act, 8 U.S.C. 1201(i).  Due to ongoing ICE operational security, this revocation will be silent; the Department of State will not notify the subject of the revocation at this time.

(U) The information in this record is confidential under INA 222(f) and specific biographical data about the alien cannot be shared in public statements.

SENSITIVE BUT UNCLASSIFIED

(U) I am providing this notice to you with express authorization for use by DHS/ICE in immigration court, as needed.

*[signature]*

Stuart R. Wilson
Deputy Assistant Secretary, Visa Services
Bureau of Consular Affairs, Visa Office

We are writing in reference to your nonimmigrant student (F-1) visa.

On behalf of the United States Department of State, the Bureau of Consular Affairs Visa Office hereby informs you that additional information became available indicating that your F-1 visa was revoked in accordance with Section 221(i) of the United States Immigration and Nationality Act, as amended.

You must not attempt to use your visa as it has been invalidated. If you intend to travel to the United States in the future, you must apply for another U.S. visa and a determination on your eligibility for a visa will be made at that time.

Regards,

Bureau of Consular Affairs - Visa Office
U.S. Department of State