**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| EFE ERCELIK,<br><br>   Petitioner,<br><br> v.<br><br>PATRICIA HYDE, Acting Director of Boston Field Office, U.S. Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the U.S. Department of Homeland Security; PAMELA BONDI, Attorney General of the United States; in their official capacities,<br><br>   Respondents. | Civil Action No. 1:25-cv-11007 |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER**

## INTRODUCTION

Mr. Ercelik, Petitioner, is a noncitizen student currently confined to his home in the constructive custody of Respondents, at risk of grave harm after being threatened with arrest and detention which would prevent him from appearing as ordered in the criminal matter pending against him in the Eastern Hampshire District Court. He is required to appear before that court in person on May 7, 2025 in order to dispose of his case. He seeks immediate injunctive relief to protect him from the ongoing and imminent harm caused by Respondents' violations of his Constitutional rights.

For these reasons, Mr. Ercelik asks this Court to provide immediate relief, enjoining Respondents from preventing him from attending his criminal hearing, resolving his case, and immediately departing the United States at his own expense.

## STATEMENT OF FACTS

**I.     Legal Background**

    **A.     Constructive Custody**

Mr. Ercelik is under Respondents' constructive custody. His liberty is constrained pursuant to the ICE officers currently waiting outside his home to take him to a detention center. Custody under § 2241 does not necessarily mean physical custody. *See e.g.*, *Mendonca v. INS*, 52. F. Supp.2d 155, 159 (D. Mass. 1999); *aff'd* 201 F.3d 427 (1st Cir. 1999). The habeas statute "does not attempt to mark the boundaries of 'custody' nor in any way other than by use of that word attempt to limit the situations in which the writ can be used." *Jones v. Cunningham*, 371 U.S. 236, 238 (1963). The "in custody" requirement for habeas corpus petitions should be liberally construed. *Maleng v. Cook*, 490 U.S. 488, 492 (1989); *see also Valdez v. Hulihan*, 640 F.Supp.2d 514, 515 (S.D.N.Y.2009). "The very nature of the writ demands that it be administered with the

initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." *Harris v.. Nelson*, 394 U.S. 286, 291 (1969). The Supreme Court has "consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms ... or scholastic procedural requirements." *Hensley v. Mun. Court, San Jose Milpitas Judicial Dist., Santa Clara Cnty., Cal.*, 411 U.S. 345, 350 (1973).

      **B.**    **Student Visa Revocation vs. Termination of Student Status**

While it is alleged that Mr. Ercelik's student visa has been revoked by the Department of State, he remains in valid student status. The revocation of an F-1 visa does not constitute a failure to maintain F-1 student status and, therefore, cannot serve as a basis for termination of F-1 student status. 8 C.F.R. § 214.1(d). *Jie Fang v. Dir. United States Immigration & Customs Enforcement*, 935 F.3d 172, 185 n.100 (3d Cir. 2019). Under 8 C.F.R. § 214.1(d), DHS can terminate F-1 student status only when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination.

In other words, under this regulation, the revocation of an F-1 visa does not provide a basis to terminate F-1 student status. DHS's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." *See* ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf. Rather, if the visa is revoked, the student is permitted to pursue his course of study in school, but upon departure, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States. *See* Guidance Directive 2016-03, 9 FAM 403.11-3 –

VISA REVOCATION (Sept. 12, 2016), available at https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation. If DHS seeks to terminate F-1 student status (and then reflect said termination in the SEVIS system) after—or independent of—revocation of an F-1 visa, DHS must comply with 8 C.F.R. § 214.1(d). *See Jie Fang*, 935 F.3d at 185 n.100. DHS has not, and cannot, unilaterally terminate Mr. Ercelik's F-1 student status. He remains in status at this time.

**II.     Mr. Ercelik's case**

Mr. Ercelik, a citizen of Turkey and a student at Hampshire College, was charged on November 6, 2023 in Eastern Hampshire District Court with offenses arising out of an alleged incident taking place at an on-campus demonstration at the University of Massachusetts Amherst on November 3, 2023. (Doc. No. 9 ¶¶ 20-24.) Mr. Ercelik is not permitted to leave Massachusetts during the pendency of that case, per order of the criminal court. At the demonstration where the alleged incident took place, Mr. Ercelik, a pro-Palestinian student activist, and the alleged victim, who claimed to be demonstrating his support for Israel, allegedly entered into a verbal and physical confrontation. *Id.* On April 13, 2025, an organization promoting the deportation of pro-Palestinian student activists made a post on X stating that it had "submitted [Mr. Ercelik's] name for deportation." (Doc. No. 9-5.) On the morning of April 16, 2025, ICE officers arrived at Mr. Ercelik's home, demanding that he exit his home to allow them to arrest him. (Doc. No. 9 ¶ 25.) They informed Mr. Ercelik that his F-1 student visa had been revoked. (*Id.* ¶ 28.) As officers did not have a judicial warrant for his arrest, Mr. Ercelik declined to consent to allow them to enter his home. (*Id.* ¶ 27.) Officers remained outside Mr. Ercelik's home, and remain there still, ensuring that he cannot depart his home without being subject to warrantless arrest. (*Id.*)

The next day, April 17, 2025, Mr. Ercelik's defense counsel informed the Eastern Hampshire District Court of the situation. (Doc. No. 9-6). Mr. Ercelik, through counsel, and the

3

Commonwealth of Massachusetts came to an agreement on the terms of a plea that would resolve his case. (Doc. No 9 ¶ 33.) However, Mr. Ercelik's motion to be permitted to attend the change of plea hearing via Zoom was denied with prejudice. (*Id.* ¶ 32.) A change of plea hearing was scheduled for May 7, 2025, which Mr. Ercelik is required to attend in person. *Id.* Although the plea reached in his criminal case does not render Mr. Ercelik deportable, Mr. Ercelik has no intention of attempting to remain in the United States once his obligations to the criminal court are resolved. The terms of the plea agreement reached do not prevent him from leaving the country. (Doc. No. 9-6, Doc. No. 9 ¶ 33.). He has purchased a plane ticket that would allow him to fly from Boston to his home country immediately after his case is resolved. (Doc. No. 9-1.)

So long as he is in the constructive custody of Respondents, however, Mr. Ercelik cannot leave his home. He has been informed that if he leaves his home, Respondents will arrest him and take him to a detention facility. Based on Respondents' recent actions and patterns of behavior in Boston and elsewhere around the country, Petitioner understands that if Respondents take him to a detention facility, they will not thereafter produce him for his criminal court hearing. (Doc. No. 9 ¶¶ 36-38.) He will be in violation of the court order against him, and deprived of his right to participate in his defense.

Mr. Ercelik has expressed his willingness and intention to "self-deport" — a policy explicitly endorsed by the President[1] — at his own expense, as soon as he is able to do so without violating an order of a court of this Commonwealth. His defense counsel is available to pick him up and drive him to his court hearing on May 7, 2025, and undersigned counsel is available to drive him from that courthouse to Boston Logan International Airport upon the resolution of his

---

[1] "Trump says he wants to give money and airplane tickets to immigrants who 'self-deport,'" Associated Press (April 15, 2025), available at https://apnews.com/article/trump-selfdeportation-immigration-b20ea807dff533d325b5ac87f60e2e70 (last accessed April 23, 2025).

4

criminal matter. Mr. Ercelik remains open to resolving this matter in any other way that would be amenable to Respondents and would allow him to depart voluntarily as soon as his criminal hearing has ended, including mediation or stipulating to a removal order. He is seeking this relief in order to save all parties involved time, money, and inconvenience, and to promote the interests and efficient administration of justice.

## ARGUMENT

To obtain temporary injunctive relief, Mr. Ercelik must demonstrate that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of that relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Brox v. Hole*, 83 F.4th 87, 91 (1st Cir. 2023). Irreparable harm and likelihood of success are the factors that "weigh heaviest in the analysis." *Braintree Lab'ys, Inc. v. Citigroup Glob. Mkts. Inc.*, 622 F.3d 36, 41 (1st Cir. 2010). When the government is a party, the balance of equities and public interest merge. *Does 1-6 v. Mills*, 16 F.4th 20, 37 (1st Cir. 2021); *Nken v. Holder*, 556 U.S. 418, 435 (2009). The standard for relief under 5 U.S.C. § 705 is the same as that required for a temporary restraining order (TRO) or preliminary injunction (PI). *See, e.g.*, *Colorado v. EPA*, 989 F.3d 874, 883 (10th Cir. 2021); *Cook Cnty. v. Wolf*, 962 F.3d 208, 221 (7th Cir. 2020); *Seafreeze Shoreside, Inc v. U.S. Dep't of Inter.*, No. 1:22-CV-11091-IT, 2023 WL 3660689, at *3 (D. Mass. May 25, 2023); *Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*, 496 F. Supp. 3d 600, 609 (D. Mass. 2020). With respect to return of O.C.G. to the United States, "[w]hether a mandatory preliminary injunction should issue typically depends on the exigencies of the situation, taking into account [the] four familiar factors" under the *Winters* test. *W. Holding Co., Inc. v. AIG Ins. Co.-Puerto Rico*, 748 F.3d 377, 383 (1st Cir. 2014).

5

**I.     Mr. Ercelik Satisfies the Requirements for a TRO.**

    **A.     Mr. Ercelik is likely to succeed on the merits of his claims.**

Mr. Ercelik is likely to prevail on his challenge to Respondents' unlawful constructive detention of his person. His constructive detention violates his First, Fifth, and Six Amendment rights under the Constitution.

The First Amendment to the United States Constitution provides in part that "Congress shall make no law . . . abridging the freedom abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. Amend. I. The First Amendment protects past and future speech. *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009). The First Amendment generally precludes the government from restricting expression because of its message, ideas, subject matter, or content. *Ashcroft v. Am. Civ. Liberties Union,* 535 U.S. 564, 573 (2002). Speech on matters of public concern is entitled to the highest level of protection under the First Amendment. *See, e.g., Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1034 (1991). These protections extend to noncitizens residing within the United States. *Bridges v. Wixon,* 326 U.S. 135, 148 (1945). The First Amendment applies to actions taken against people in custody, *Gill v. Pidlypchak*, 389 F.3d 379 (2d Cir. 2004), and those threatened with deportation, *Ragbir v. Homan*, 923 F.3d 53, 66 (2d Cir. 2019) (internal citations omitted), *cert. granted, remanded, and vacated sub nom. on other grounds*, *Pham v. Ragbir*, 141 S. Ct. 227 (2020). Retaliatory enforcement implicates First Amendment protections even in the immigration context. *Id.* at 71.

To state a First Amendment retaliation claim, a plaintiff must show that: '(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially

6

caused by [the 's] exercise of that right; and (3) the defendant's actions caused [the plaintiff] some injury.'" *Ragbir v. Homan*, 923 at 66.

Mr. Ercelik's past speech, including the alleged altercation at the pro-Israel demonstration on November 3, 2023, implicates matters of prominent public concern which have garnered national attention. Respondents have taken adverse actions against Mr. Ercelik that are motivated, at least in part, by his past and future exercise of First Amendment-protected speech, as demonstrated by the fact that they sought to arrest him only after his name was "submitted for deportation" by a politically-motivated organization — when his criminal charges had been pending for a year and a half. By revoking his visa and threatening him with arrest and detention, Respondents threaten Mr. Ercelik with the ultimate punishment for speaking out and discourage Mr. Ercelik from speaking out in the future. Respondents' apparent intention to initiate removal proceedings against Mr. Ercelik, rather than allowing him to "self-deport," is punitive and retaliatory in nature, in response to his protected speech. This is an obvious violation of his First Amendment rights.

Mr. Ercelik will also prevail in showing that his Fifth Amendment rights to due process have been violated. The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Mr. Ercelik is under ICE's constructive custody. His liberty is constrained pursuant to the ICE officers currently waiting outside his home to take him to a detention center. Respondents' constructive detention of Petitioner is unjustified. Respondents have not demonstrated that Petitioner, who has complied with every term of the criminal court in his ongoing case, remains in valid immigration status, and who could have departed the U.S. at any point were it not for his respect for the rule of law and

for the criminal courts of this Commonwealth, need be detained. It is apparent that Respondents are using detention and removal proceedings—civil processes—for punishment and retribution, and not to advance the legitimate purposes of immigration detention. *See Zadvydas*, 533 U.S. 678, 690 (recognizing that ensuring future appearances and preventing danger to community are two legitimate reasons for immigration detention).

There is no credible argument that Petitioner cannot be safely released to his community. The Commonwealth of Massachusetts has never considered Mr. Ercelik a danger or a flight risk; after his initial arrest in his criminal matter, he was released on $250.00 bail, and has vindicated that decision by diligently appearing at every hearing where his presence is required. His detention is groundless, and is in violation of his Fifth Amendment right to due process. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972) ("nature and duration" of civil confinement must "bear some reasonable relation to the purpose for which the individuals is committed"). Mr. Ercelik's continued detention therefore raises serious due process concerns under the Fifth Amendment, even in the immigration context where judicial deference is high but not without constitutional safeguards. *See Zadvydas*, 533 U.S. at 700 (2001) (Executive Branch has broad latitude in realm of immigration but remains subject to important constitutional limitations).

Furthermore, Mr. Ercelik will prevail in showing that his rights under the Sixth Amendment to the Constitution are being violated. The Sixth Amendment to the U.S. Constitution guarantees rights to individuals accused of crimes in criminal prosecutions. U.S. Const. Amend. VI. Citizens and noncitizens alike enjoy Sixth Amendment protections in criminal proceedings. Specifically, it ensures the right to a speedy and public trial, the right to an impartial jury, the right to be informed of the charges, the right to confront witnesses, the right to compulsory process for obtaining witnesses in one's favor, and the right to legal counsel. *Id*.

Absent the ability to appear in criminal court to face the charges against him, Mr. Ercelik's Sixth Amendment rights implicated in his case before the Eastern Hampshire District Court would be violated. If he is removed, he would be deprived of all ability to participate in his own defense. If he is taken into detention, he would just as likely be deprived of all ability to participate in his defense, as demonstrated by the Respondents' pattern and practice of failing to make alien detainees available for criminal matters. *See Doe v. Department of Homeland Security,* No. 03:24-cv-00259 Doc. 77 (W. D. Penn. January 31, 2025) (order granting preliminary injunction in challenge to ICE's policy and practice of refusing to allow noncitizens detained at Moshannon Valley Processing Center with unresolved criminal charges in New Jersey's courts to virtually participate in their criminal legal proceedings).

The Sixth Amendment to the U.S. Constitution guarantees defendants in criminal prosecutions the right to a speedy and public trial, compulsory process, assistance of counsel, and confrontation. By preventing Mr. Ercelik from participating in his criminal matters, Respondents are denying him his rights under the Confrontation Clause to confront his accusers and hear testimony regarding his alleged criminal conduct, and denying his rights to a speedy trial as his criminal matter has been subject to delays because he has no means of making an appearance and participating.

Courts have consistently found that "[A] Defendant's absence from the District … where he faces charges and where he allegedly committed the charged offense, interferes with his ability to consult with counsel and prepare a defense, in violation of the Sixth Amendment, and that Defendant's inability to do so is solely attributable to the government." *United States v. Castillo*, 537 F. Supp. 3d 120, 124 (D. Mass. 2021); *see also United States v. Resendiz-Guevara*, 145 F. Supp. 3d 1128, 1138 (M.D. Fla. 2015) ("It is clear that Defendant's deportation presents a clear

9

challenge … to his ability to consult with counsel, to review the evidence against him and to prepare a defense to the charge."); *United States v. Ferreira-Chavez*, 1:20-cr-00145, 2021 WL 602822, at *4 (D. Idaho Feb. 12, 2021) (finding that the defendant's removal "severely curtailed" his "ability to meaningfully communicate with counsel or prepare his defense"). Even if Respondents should decide to allow Mr. Ercelik to return to participate in his criminal case at some point in the future, that does not explain "how a delayed trial would not itself violate his Sixth Amendment rights, as well as the Speedy Trial Act." *Castillo*, 537 F. Supp. 3d at 124.

Respondents have shown a pattern of refusing to make people in Petitioner's position available for their criminal court hearings.[2] Mr. Ercelik has every reason to believe Respondents will not permit him to attend his criminal court matter on May 7, 2025 so long as he remains in their constructive custody. This is in violation of his Sixth Amendment rights.

**B.     Mr. Ercelik has suffered and will continue to suffer irreparable harm absent injunctive relief.**

While constructively detained inside his home, Mr. Ercelik suffers from the deprivation of his liberty; he cannot leave his apartment. The stress and fear he experiences constantly at knowing that the moment he steps outside his door, he will be taken to a detention facility and deprived of his ability to resolve the criminal matter pending against him, is immense. This is an irreparable harm. *See, e.g., Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (finding reasonable fear of being subject to unlawful detention absent temporary relief may constitute irreparable harm). He cannot attend to any business or errands outside of his home. He is a captive, staring down the possibility that, just when his long-pending criminal matter is about to be finally behind him, he

---

[2] *See* Doc. No. 9 ¶¶ 36-38; *see also* "'Egregious conduct': Boston judge finds ICE agent in contempt of court after man detained mid-trial," Boston 25 News (April 1, 2025) available at https://www.boston25news.com/news/local/egregious-conduct-boston-judge-finds-ice-agent-contempt-court-after-man-detained-mid-trial

10

could through no fault of his own be prevented from attending his criminal hearing, placing him in violation of an order of the criminal court and causing a warrant to issue against him.

Unless the relief Mr. Ercelik seeks is granted, he will suffer the irreparable harm of being unable to finalize the plea agreement in his case before the Eastern Hampshire District Court. If he is detained and prevented from attending his criminal hearing, he will suffer from the inability to participate in the case against him because his failure to appear will likely result in a warrant for his arrest from the criminal bench as well as the forfeit of the plea agreement his counsel has arranged for him. Until Respondents sought to arrest Mr. Ercelik, this criminal matter was the only factor preventing him from returning home to his country and his family, as he has long wished to do. Respondents would prevent him from taking this essential step, ironically severely complicating Mr. Ercelik's path to departing the United States. But for Respondents, Mr. Ercelik could have departed the United States and reunited with his family on April 17, 2025. Every day he is detained he suffers the hardship of being trapped in his apartment, and in this country.

### C. The Balance of Hardships and Public Interest Weigh Heavily in Mr. Ercelik's Favor.

The final two factors for a TRO—the balance of hardships and public interest—"merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. Here, Mr. Ercelik faces weighty hardships: the deprivation of his liberty, separation from his family, and the very real possibility that he will, though no will of his own, be forced to violate orders of the criminal court.

Respondents, by contrast, would face minimal hardship upon the granting of the relief Mr. Ercelik seeks. Indeed, granting this relief would only more efficiently achieve Respondents' goals. Mr. Ercelik is already under an order of the court not to leave Massachusetts until his criminal matter has been resolved, and he has demonstrated over the past year and a half that he has no intention of fleeing the jurisdiction. Allowing Mr. Ercelik to depart the United States immediately

11

after his criminal hearing, and at his own expense, would save Respondents and the taxpayers of this country a great deal of time and money that Respondents would otherwise expend in monitoring Mr. Ercelik's home, arresting Mr. Ercelik, detaining him at government expense during the pendency of his eventual removal proceedings, and ultimately (if he is indeed ordered removed) flying Mr. Ercelik to Turkey, again at government expense. Respondents seek the same result Mr. Ercelik does — simply at much greater cost, and after much greater delay. Furthermore, Respondents "cannot suffer harm from an injunction that merely ends an unlawful practice . . . ." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). The public interest is served by the faithful execution of the laws, and that interest includes respect for the rights afforded to citizens and noncitizens alike under the Constitution; the ability of the Commonwealth of Massachusetts to prosecute crimes committed within its jurisdiction; and the efficient administration of justice. Clearly the equities and the public interest weigh heavily in Petitioner's favor.

## CONCLUSION

Accordingly, as outlined in the accompanying proposed order, Mr. Ercelik requests that the Court grant temporary injunctive relief, enjoining Respondents from preventing him from attending his hearing in his criminal matter in Eastern Hampshire District Court on May 7, 2025; and enjoining Respondents from preventing him from immediately departing that hearing and proceeding directly to Boston Logan International Airport to depart the United States, flying home at his own expense.

Respectfully submitted,

*/s/ Rachel M. Self*
Rachel M. Self
RACHEL M. SELF, P.C.
6 Beacon Street, Suite 825
Boston, MA 02108

(617) 742-0191 (Office)
(617) 742-0194 (Fax)
rms@attorneyself.com
BBO No. 660243

Dated: April 23, 2025