**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| EFE ERCELIK, <br><br>             Petitioner, <br><br>           v. <br><br> PATRICIA HYDE, Acting Director of Boston Field Office, U.S. Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the U.S. Department of Homeland Security; PAMELA BONDI, Attorney General of the United States; in their official capacities, <br><br>            Respondents, | Civil Action No. 1:25-cv-11007-AK |

**RESPONDENTS' OPPOSITION TO PETITIONER'S AMENDED HABEAS PETITION**
**AND MOTION FOR A TEMPORARY RESTRAINING ORDER AND**

Respondents, by and through their attorney, Leah B. Foley, United States Attorney for the

District of Massachusetts, submit this opposition to Petitioner Efe Ercelik's Amended Habeas

Petition (Doc. No. 9) and Motion for a Temporary Restraining Order ("TRO"). Doc. No. 10.

## INTRODUCTION

Petitioner is a native and citizen of Turkey who was accorded the privilege of admission

to the United States pursuant to an F-1 student visa in 2022. Doc. No. 9, ¶¶ 1, 19. On November

3, 2023, Petitioner allegedly approached an individual holding an Israeli flag "in an aggressive

manner, calling him a 'little bitch boy,' telling him to go home, and referring to him as a

Zionist." *See* Statement of Facts in Support of Application for Criminal Complaint, pg. 1,

attached as Exhibit 1. Escalating his attack on the victim, Petitioner allegedly "began to punch

him in the face" and then "followed up with a shove and kick to his stomach area." *Id.*

Petitioner then "ripped a small Israeli flag" from the victim and "began destroying it." *Id.*

Petitioner was then witnessed motioning with a knife towards the victim "before stabbing the remains of the flag" before he was observed "spit[ting] and continu[ing] to rip the flag before subsequently throwing it in a trash receptacle …". *Id.*

Witnesses to Petitioner's attack on the victim recounted Petitioner yelling at the victim: "You think you're so tough waiving a flag, Zionist Shitbag, let's see how tough you are when I'm out here!  I'll get you; you'll see what happens!"  *Id.* at 3.  An individual who tried to intervene stated that Petitioner kicked him "as hard as he could" and shoved him as well.  *Id.* Petitioner was also witnessed allegedly "displaying cruel gestures and referencing derogatory Jewish stereotypes".  *Id.* at 4.  Petitioner was charged with two counts of Assault and Battery with a Dangerous Weapon, Assault and Battery to Intimidate, Larceny form a Person, Property Vandalism, and Disorderly Conduct in the Eastern Hampshire District Court in Belchertown, Massachusetts.  *See* State Court Docket, attached as Exhibit 2.  Petitioner plans to plead guilty to two counts of assault and battery and one count of disorderly conduct at a May 7, 2025 appearance in state court.  Doc. No. 9, ¶ 33.

On April 9, 2025, the U.S. Department of State revoked Petitioner's visa pursuant to 8 U.S.C. § 1201(i), which allows revocation of a visa at the Secretary of State's discretion.  *See* Declaration of Homeland Security Investigations Deputy Special Agent in Charge, Amy Iacoi, ¶ 7, attached as Exhibit 3.  Petitioner is now subject to arrest and removal from the United States pursuant to 8 U.S.C. § 1227(a)(1)(B) and therefore U.S. Immigration and Customs Enforcement ("ICE") issued a Warrant of Arrest for Petitioner on April 10, 2025 as authorized by 8 U.S.C. § 1226(a).  *Id.*, ¶¶ 8-10; *see* 8 U.S.C. § 1226(a) ("an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.").  ICE intends to effectuate Petitioner's arrest to initiate removal proceedings against him as he is subject to

removal from the United States under the Immigration and Nationality Act ("INA") and due to his alleged criminal activity while in the United States.  *Id.*, ¶ 10.

Petitioner seeks an order from the Court enjoining ICE from preventing him from attending his May 7 court appearance and preventing ICE from commencing removal proceedings against him.  Doc. No. 9 at PRAYER FOR RELIEF; Doc. No. 11.  Petitioner claims he was expressing his First Amendment rights when he physically assaulted and threated the victims of his criminal conduct and that the government, in violation of his First Amendment rights, has unlawfully retaliated against him by revoking his visa and seeking to arrest him.  Doc. No. 9, ¶¶ 40-50.   Physically assaulting an individual and making threatening comments and gestures, however, are not examples of protected First-Amendment speech.  *Wisconsin v. Mitchell,* 508 U.S. 476, 484 (1993) ("Thus, a physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment."); *Counterman v. Colorado*, 600 U.S. 66, 72 (2023) ("True threats of violence, everyone agrees, lie outside the bounds of the First Amendment's protection.").  As such, Petitioner's First Amendment retaliation claim is utterly without merit.

Even if Petitioner could raise a colorable claim for a constitutional violation, which he cannot, this Court lacks jurisdiction over his Amended Petition under the INA.  First, Petitioner is not detained by ICE currently and therefore is not in custody as required for this Court to extend the writ of Habeas Corpus.  Further, District courts lack jurisdiction over the sorts of governmental decisions explicitly or implicitly challenged in the Petition, including the revocation of Petitioner's visa, ICE's decision to initiate removal proceedings, ICE's determination on whether to arrest and detain Petitioner, and ICE's determination regarding Voluntary Departure and the execution of Petitioner's removal order if such order is entered.  *See*

8 U.S.C § 1201(i); 8 U.S.C. § 1252(g); 8 U.S.C. § 1226(e); 8 U.S.C. §§ 1252(a)(5) and (b)(9); 8 U.S.C. § 1252(a)(2)(B)(i).

If Petitioner is arrested and detained by ICE, Petitioner can seek release before an immigration judge ("IJ") and can pursue relief from removal in Immigration Court, including asking for Voluntary Departure from the IJ. Petitioner can seek to attend his state court hearing on May 7 through the process routinely utilized between the Massachusetts Trial Court, the Sheriffs' Departments, and ICE.

This Court, however, lacks jurisdiction to prevent ICE from initiating removal proceedings against Petitioner, arresting and detaining him, from granting his Voluntary Departure from the United States and from interfering with his removal from the United States. As such, the TRO motion must be denied, and the Amended Petition must be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Petitioner's Immigration History.

Petitioner is a native and citizen of Turkey. Doc. No. 9, ¶ 1. He was admitted to the United States in the Spring of 2022 pursuant to his student visa. *Id.*, ¶ 19. With the revocation of his visa under Section 1201(i), Petitioner is subject to removal from the United States pursuant to 8 U.S.C. § 1227(a)(1)(B) as an alien "whose nonimmigrant visa … has been revoked under section 1201(i)." *Id.*, ¶ 17. ICE has discretion to arrest Petitioner pursuant to 8 U.S.C. § 1226(a) for purpose of removal proceedings. Exh. 3, ¶ 9. Removal proceedings are initiated with the service of a Notice to Appear ("NTA"). 8 U.S.C. § 1229(a)(1)(A)-(G). As of April 28, 2025, Petitioner has not been arrested and removal proceedings have not been initiated.

### B. Petitioner's Habeas Petitions and Motion for Temporary Restraining Order.

Petitioner filed his original Petition on April 16, 2025 asserting that he was in the

"constructive custody" of the U.S. Department of Homeland Security as agents from Homeland Security Investigations ("HSI") were at his residence attempting to arrest him. Doc. No. 1, ¶ 1. Petitioner filed an Amended Petition on April 23, 2025 and asserts that such "constructive custody" violates the First Amendment, the Fifth Amendment, and the Sixth Amendment to the U.S. Constitution. Doc. No. 9, Counts I-III.

As to his First Amendment claim, Petitioner asserts that the State Department's revocation of his visa and ICE's threat to arrest, detain and remove him are on account of his "speaking out" and are done to discourage him from "speaking out in the future." *Id.* ¶ 45. Petitioner also asserts his "constructive custody" violates the Fifth Amendment as such custody is "unjustified" and not related to a legitimate purpose of civil immigration detention. *Id.* ¶ 63. Petitioner also pleads a Sixth Amendment violation would occur if he were removed from the United States before resolving his pending criminal charges. *Id.* ¶ 55.

Petitioner asks this Court to order ICE to allow him to attend his state court proceedings and to enjoin ICE from preventing him from departing the United States voluntarily following the conclusion of his criminal proceedings. *Id.* at PRAYER FOR RELIEF. Petitioner also filed his Motion for a Temporary Restraining Order where he seeks similar relief, asking this Court to enjoin ICE from exercising its statutory authority to arrest, detain, and seek his removal from the United States after issuing him with a Notice to Appear. Doc. No. 10.

## JURISDICTION AND STANDARD OF REVIEW

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allopath Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted). Title 28 U.S.C. § 2241 provides district courts with jurisdiction to hear federal habeas petitions. To

warrant a grant of writ of habeas corpus, the burden is on the petitioner to prove that his custody is in violation of the Constitution, laws, or treatises of the United States. *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner.").

Injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the moving party must establish 1) a reasonable likelihood of success on the merits, 2) the potential for irreparable harm if the injunction is withheld, 3) a favorable balance of hardships and 4) the effect on the public interest. *Jean v. Mass. State Police*, 492 F.3d 24, 26-27 (1st Cir. 2007). Out of these factors, the likelihood of success on the merits "normally weighs heaviest in the decisional scales." *Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 66 (1st Cir. 2009). If the court lacks jurisdiction to award the ultimate relief sought, then injunctive relief cannot be awarded as the applicant cannot prove a reasonable likelihood of success on the merits of the claim. *Compere v. Riordan*, 368 F. Supp. 3d 164, 170 (D. Mass. 2019).

## ARGUMENT

Petitioner's Amended Petition and his TRO motion must be denied as the Court lacks jurisdiction over this action and even if jurisdiction was established, the Amended Petition fails on the merits. First, Petitioner is not in custody as required for this Court to extend the writ of habeas corpus pursuant to 28 U.S.C. § 2241(c). His future claims concerning arrest and detention are therefore not ripe for this Court's review. Even if this Court deems Petitioner in custody, or if Petitioner is arrested and detained by ICE, this Court nonetheless lacks jurisdiction to review Petitioner's challenges and to order the requested relief. Finally, even if Petitioner met

his burden to demonstrate this Court has jurisdiction over this action, his Amended Petition fails on its merits.

**A.** **Petitioner is not in ICE Custody as Required to Extend the Writ of Habeas Corpus.**

Contrary to Petitioner's claims, this Court lacks jurisdiction over his Amended Petition because he is not in ICE custody.  Petitioner seeks habeas relief pursuant to 28 U.S.C. § 2241(c)(3) which provides federal district courts with jurisdiction to entertain petitions for habeas relief from persons who are "in custody in violation of the Constitution or laws or treaties of the United States."  The custody requirement "is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty." *U.S. ex rel. Bailey v. U.S. Commanding Officer of Office of Provost Marshal, U.S. Army,* 496 F.2d 324, 325–26 (1st Cir.1974) (citing *Hensley v. Municipal Court,* 411 U.S. 345, 351(1973) (internal quotation marks omitted)).

The U.S. Court of Appeals for the First Circuit has explained that "a[n] [immigration] detainer, together with a final order of removal, may suffice to place the alien in the legal custody of [ICE] even if the alien is physically detained somewhere else."  *United States v. Female Juv., A.F.S.*, 377 F.3d 27, 35 (1st Cir. 2004).  Courts within this District have concluded that an alien can satisfy the "in custody" requirement of Section 2241 if a final order of removal against the alien exists.  *See Devitri v. Cronen,* 290 F. Supp. 3d 86, 90 (D. Mass. 2017) ("Final orders of removal have been held to satisfy the custody requirement."); *Mendonca v. I.N.S.,* 52 F. Supp. 2d 155, 159 (D. Mass.), *aff'd,* 201 F.3d 427 (1st Cir. 1999) (While petitioner "is not in the physical custody of [ICE], he is nonetheless 'in custody' for purposes of § 2241 because he is subject to a final order of deportation.").  Here, Petitioner is not subject to an immigration detainer, and he is not subject to a final order of removal.  He is not in custody at a state facility

awaiting ICE detention.  He is not subject to monitoring or reporting requirements.  He is

residing at his apartment and therefore he is not in custody for purposes of Section 2241.  As

such, this Court lacks jurisdiction to extend the writ of habeas corpus to him at this juncture.

    **B.**  <u>**Even if Petitioner is Deemed in Custody, this Court Lacks Jurisdiction to Review the Challenged Executive Actions.**</u>

Even if Petitioner is deemed in custody (or is subsequently arrested and detained), this

action must still be dismissed as the Court lacks jurisdiction over Petitioner's challenges to the

revocation of his visa and any future initiation of removal proceedings and ensuing arrest,

detention, and removal from the United States.

    **1.**  <u>**District courts lack jurisdiction to review the Department of State's revocation of visas.**</u>

Petitioner asserts that the revocation of his visa was unlawful because it was on account

of his past and future exercise of First Amendment-protected speech.  Doc. No. 9, ¶ 45.  This

claim fails for multiple reasons.  First, Petitioner has not named the State Department or the

Secretary of State as Respondents to this action and therefore claims regarding actions taken by

the State Department or the Secretary of State are not properly before this Court.  Second,

Petitioner fails to explain what First Amendment speech he engaged in that purportedly led to

the revocation of his visa.  Physically assaulting an individual, making threatening comments

and gestures at such individual, and ripping a flag from such individual's hands are not

examples of protected First-Amendment speech.  *Counterman*, 600 U.S. at 72 ("True threats of

violence, everyone agrees, lie outside the bounds of the First Amendment's protection."); *N. A.*

*A. C. P. v. Claiborne Hardware Co.*, 458 U.S. 886, 916, 102 S. Ct. 3409, 3427, 73 L. Ed. 2d

1215 (1982) ("The First Amendment does not protect violence.").[1]

Ultimately, however, Petitioner's challenge to the revocation of his visa cannot be heard

by this Court as 8 U.S.C. § 1201(i) specifically states that there "shall be no means of judicial

review" of such revocation, including habeas review, "except in the context of removal

proceedings if such revocation provides the sole ground for removal". Here, ICE intends to

issue Petitioner with a NTA initiating removal proceedings on account of his revoked visa and

he therefore can seek judicial review before an Immigration Court, the BIA, and eventually to a

court of appeals if he is ordered removed. As explained by another district court when

dismissing a petition which challenged a visa revocation on account of a political dispute:

"Congress has taken it out of my hands. … I cannot address this argument because I lack

subject matter jurisdiction over the case. The legality of petitioner's detention depends on the

resolution of such issues as whether the government lawfully revoked his visa and whether he is

removable from the United States and, as indicated above, I am precluded from reviewing those

issues." *Bolante v. Achim*, 457 F. Supp. 2d 898, 902 (E.D. Wis. 2006).

Other courts also routinely find themselves without jurisdiction to consider the merits of

a visa revocation upon operation of Section 1201(i)'s language. *See e.g.*, *Aldabbagh v. Sec'y of*

*State*, No. 6:21-CV-532-GAP-EJK, 2021 WL 6298664, at *2 (M.D. Fla. Oct. 5, 2021) (Finding

no jurisdiction over complaint that asked court to declare revocation of visa to be arbitrary and

capricious, an abuse of discretion, and not in accordance of law.); *Tarlinsky v. Pompeo*, No.

---

[1] Petitioner also raises the undeveloped argument that the revocation of his visa violated
the Fifth Amendment Due Process Clause. Doc. No. 1, ¶ 50. As this Court has explained,
however, nonimmigrant student visa holders "have no property or liberty interest in those visas
and thus no due process claim with respect to the supposed revocation." *Louhghalam v. Trump*,
230 F. Supp. 3d 26, 36 (D. Mass. 2017).

3:19-CV-659 (VLB), 2019 WL 2231908, at *5 (D. Conn. May 23, 2019) ("As the basis for [the visa] revocation is expressly non-reviewable by statute, the [c]ourt lacks subject matter jurisdiction over" the complaint.).   To the extent Petitioner seeks review of the State Department's revocation of his visa on the specious theory that such revocation was in retaliation of his exercise of the First Amendment, this Court lacks jurisdiction to so review.

    **2.**   <u>**District courts lack jurisdiction over ICE's decisions to commence removal proceedings and effectuate removal orders.**</u>

Petitioner's claim that ICE intends to arrest and detain him on account of his "past speech" is devoid of merit and this Court nonetheless lacks jurisdiction to consider such claims pursuant to 8 U.S.C. § 1252(g).  As noted above, Petitioner fails to assert that he engaged in protected First-Amendment activity while in the United States – he cites no articles authored, no speeches made, no engagement in peaceful protest.  Instead, Petitioner bases his First Amendment claim on his alleged physical assault and threat of violence that he conveyed at a rally held in support of hostages taken by Hamas.  Doc. No. 9, ¶ 44.  Once again, however, "violence or other types of potentially expressive activities that produce special harms distinct from their communicative impact, … are entitled to no constitutional protection." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 628 (1984).   As such, his claim that his "past and future exercise of First Amendment-protected speech" has led to ICE's decision to initiate removal proceedings against him is baseless.  Doc. No. 9, ¶ 45.  Instead, ICE's determination to initiate removal proceedings against Petitioner is on account of his removability from the United States pursuant to 8 U.S.C. § 1227(a)(1)(B) as he is deportable under the INA because his nonimmigrant visa has been revoked and because of his alleged criminal activity.  Exh. 3, ¶¶ 8-10.

Again, however, this Court lacks jurisdiction to consider Petitioner's challenge to ICE's decision to initiate removal proceedings against him.  Congress, through the REAL ID Act,

made clear that district courts do not have jurisdiction to review ICE's discretionary decisions concerning the commencement of removal proceedings. Specifically, 8 U.S.C. § 1252(g) strips courts of jurisdiction to hear "any cause or claim by or on behalf of an alien arising from the decision or action by [ICE] to *commence proceedings* … against any alien under this chapter." (emphasis added). Section 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999). Section 1252(g) plainly applies to decisions and actions to *commence* proceedings that ultimately may end in the execution of a final removal order. *See Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) ("We construe § 1252(g) . . . to include not only a decision in an individual case *whether* to commence, but also *when* to commence, a proceeding."); *Obado v. Superior Ct. of New Jersey Middlesex Cnty.,* No. CV 21-10420 (FLW), 2022 WL 283133, at *3 (D.N.J. Jan. 31, 2022) ("Because [p]etitioner challenges the decision to commence and adjudicate removal proceedings against him, the [c]ourt lacks jurisdiction to direct [respondents] to terminate [p]etitioner's NTA and/or halt his removal proceedings.").

In addition to barring challenges to *whether* and *when* to commence proceedings, § 1252(g) bars district courts from hearing challenges to the *method* by which ICE chooses to commence removal proceedings. *See Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("By its plain terms, [§ 1252(g)] bars us from questioning ICE's discretionary decisions to commence removal" and also to review "ICE's decision to take him into custody and to detain him during removal proceedings"); *Saadulloev v. Garland*, No. 3:23-CV-00106, 2024 WL 1076106, at *3 (W.D. Pa. Mar. 12, 2024) ("The Government's decision to

arrest [petitioner], clearly is a decision to 'commence proceedings' that squarely falls within the jurisdictional bar of § 1252(g).").

As Section 1252(g) prohibits judicial review of "any cause or claim" that arises from the commencement of removal proceedings, this provision applies to constitutional as well as statutory claims. *Candra v. Cronen*, 361 F. Supp. 3d 148, 156 (D. Mass. 2019) (Explaining that a petitioner's "attempt to frame his claim in due process language does not change [the] result" that Section 1252(g) strips jurisdiction.); *Anderson, v. Moniz*, No. CV 21-11584-FDS, 2022 WL 375231, at *4 (D. Mass. Feb. 7, 2022) ("Section 1252(g) can serve as a jurisdictional bar even when a petitioner contends that his due-process rights were violated.").

That Petitioner is speciously alleging his removal proceedings will be initiated in retaliation for his exercise of the First Amendment does not remove his claim from Section 1252(g)'s reach. *See Reno,* 525 U.S. at 487-92 (holding that Section 1252(g) deprived district court of jurisdiction over claim that certain aliens were targeted for deportation in violation of the First Amendment.); *Zundel v. Gonzales*, 230 F. App'x 468, 475 (6th Cir. 2007) (Explaining that First Amendment challenge related to immigration enforcement action "is properly characterized as a challenge to a discretionary decision to 'commence proceedings' … [and] is insulated from judicial review".); *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 945 (5th Cir. 1999) (determining that § 1252(g) prohibited review of an alien's First Amendment claim based on decision to put him into exclusion proceedings); *Vargas v. United States Dep't of Homeland Sec.*, No. 1:17-CV-00356, 2017 WL 962420, at *3 (W.D. La. Mar. 10, 2017) (Claim that ICE "violated her First Amendment right to free speech by arresting her and initiating her removal after she made statements to the media … is barred by 8 U.S.C. § 1252(g)."); *Kumar v. Holder*, No. 12-CV-5261 SJF, 2013 WL 6092707, at *6 (E.D.N.Y. Nov. 18, 2013) (Claim of

initiation of proceedings in retaliatory manner "falls squarely within Section 1252(g) … [and] that [t]he pending immigration proceedings are the appropriate forum for addressing petitioner's retaliation claim in the first instance.").

Section 1252(g) also strips this Court from entering an order staying Petitioner's removal from the United States or from directing ICE allow Petitioner to depart voluntarily as Congress made clear that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by [ICE] to … execute removal orders against any alien under this chapter."  Petitioner's request that this Court issue an order preventing his removal from the United States, or that he be allowed to depart voluntarily, while certainly premature as removal proceedings have not begun, must nonetheless be denied.  *Tejada v. Cabral*, 424 F. Supp. 2d 296, 298 (D. Mass. 2006) ("One thing the REAL ID Act certainly did do, however, was emphatically to declare that this Court was not in any way to impede orders of removal."); *Reinoso Pichardo v. Dep't of Homeland Sec*., No. CV 21-11887-FDS, 2021 WL 5772873, at *2 (D. Mass. Nov. 30, 2021) ("To the extent petitioner seeks a stay of removal, this court is without jurisdiction to grant such relief."); *Martin v. U.S. Immigration & Customs Enf't*, No. CIV.A. 13-11329-DJC, 2013 WL 3282862, at *3 (D. Mass. June 26, 2013)(same).

Section 1252(g) applies even if the stay of removal is sought to attend to state criminal proceedings.  *See Ramos v. Clark,* No. C10-1226-RSM-JPD, 2011 WL 321743, at *2 (W.D. Wash. Jan. 12, 2011), *report and recommendation adopted,* No. C10-1226-RSM, 2011 WL 317737 (W.D. Wash. Jan. 28, 2011)(Finding no jurisdiction to enter stay of removal per Section 1252(g) to allow collateral attack against criminal conviction serving as basis for removal."); *Talbot v. Ashcroft,* No. 304CV00653(JBA), 2004 WL 885194, at *1 (D. Conn. Apr. 23, 2004)

(Pending collateral attack on conviction supporting removal "does not support a basis for saying []ICE enforcement of the immigration laws.").

    If Petitioner is arrested and detained by ICE and if a removal order has not been entered against him that requires effectuation in a certain timeframe, Petitioner can seek to attend his state court criminal proceedings through the process that the Massachusetts Trial Courts, the Sheriffs' Departments, and ICE has established.[2] *See Habeing Defendants from Immigration Custody to Massachusetts Criminal Courts*, https://www.publiccounsel.net/wp-content/uploads/2019/01/Habeing-defendants-from-ICE-January-2019-FINAL-with-attachments.pdf (last accessed April 28, 2025). Under this procedure, the clerk for the state district court must issue a state writ of habeas corpus to the Sheriff with physical custody of the defendant/ICE detainee if presence in state court is requested. *Id.* The Sheriff with physical custody of the defendant/ICE detainee is responsible for transporting that person to and from state court. *Id.* Before transport can occur, "ICE must give the Sheriff permission to release the person for transport." *Id.* In arriving at this procedure, ICE requested, and the Trial Court agreed, that the state writs "include language guaranteeing that, upon the conclusion of the state proceeding, the state will return the person to ICE's custody." *Id.* at 2.

    Judicial review of Petitioner's claim that commencement of removal proceedings is unconstitutional is not only wholly without merit but is also barred by Section 1252(g). Section 1252(g) also prohibits this Court from enjoining ICE from effectuating a future order of removal from the United States or directing that ICE allow Petitioner to depart voluntarily.

---

    [2] As the First Circuit has explained, "[a]liens are not entitled to the protections of the Sixth Amendment in removal proceedings." *Ferreira v. Barr*, 939 F.3d 44, 46 n.1 (1st Cir. 2019). As such, Petitioner's claim raised concerning his desire to attend his criminal proceedings is not cognizable under the Sixth Amendment.

### 3.  8 U.S.C. § 1226(e) bars judicial review of ICE's decision to arrest and detain Petitioner.

Any future arrest and detention of Petitioner by ICE is authorized by 8 U.S.C. § 1226(a) which allows detention "pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  This provision "creates authority for *anyone's* arrest or release under § 1226—and it gives the Secretary broad discretion as to both actions…."  *Nielsen v. Preap*, 586 U.S. 392, 409 (2019) (emphasis in the original).  Petitioner's assertion that future detention is unlawful on account of his protected First Amendment speech is baseless as explained above, but also would not be properly before this Court as Congress has made clear that ICE's "discretionary judgment regarding the application of [Section 1226] shall not be subject to review."  8 U.S.C. § 1226(e).  Section 1226(e) further commands that "[n]o court may set aside any action or decision by [ICE] under this section regarding the detention of any alien or the revocation or denial of bond or parole."  *Id.*  As the Supreme Court explained in *Demore v. Kim*, 538 U.S. 510, 516-17 (2003), this provision blocks judicial review of ICE's discretionary judgments and decisions to arrest and detain aliens subject to 8 U.S.C. § 1226.  *See also Jennings v. Rodriguez*, 583 U.S. 281, 295-96 (2018) (Section "1226(e) precludes an alien from challenging a discretionary judgment by the [Secretary] or a decision that the [Secretary] has made regarding his detention or release.") (cleaned up).  As such, if ICE arrests and detains Petitioner, this Court lacks jurisdiction to consider ICE's discretionary decisions authorized by 8 U.S.C. § 1226.

In setting forth his Fifth Amendment claim, Petitioner asserts his "constructive detention" is unjustified because the Government has not demonstrated that he "needs to be detained."  Doc. No. 9, ¶ 63.  Again, leaving aside that Petitioner is currently not detained by ICE, this Court is not the forum for such a claim.  Instead, if Petitioner is arrested and detained

by ICE, Petitioner must request release from an IJ, and if dissatisfied with the outcome, to the BIA, thus receiving the process necessary to comport with the Fifth Amendment.[3] *See Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021) (Government must bear the burden of proof at a bond hearing in Immigration Court to ensure Due Process Clause is satisfied).

Petitioner further asserts that his detention is punitive and that there is no legitimate purpose for detaining him.  *Id.*, ¶ 64.  Once more, this argument is premature (and ignores the allegation of serious and violent criminal activity for which Petitioner plans to plead guilty to engaging in), but assuming Petitioner is arrested and detained by ICE, this argument nonetheless fails because Petitioner would be detained for purpose of removal proceedings and the Supreme Court has upheld the constitutionality of detention for such purpose, even when detention is mandatory and does not allow access to a bond hearing.[4] *Demore,* 538 U.S. at 523 (The "Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process."); *Wong Wing v. U.S.* 163 U.S. 288, 235 (1896) (holding deportation proceedings "would be vain if those accused could not be held in custody pending the inquiry into their true character."); *Hernandez-Lara*, 10 F.4th at 32 (Recognizing that the "prompt execution of removal orders is a legitimate governmental interest which detention may facilitate.") (cleaned up). If mandatory detention without access to a bond hearing passes constitutional muster, then Petitioner's possible detention, where he can seek a bond hearing and

---

[3] After ICE makes the initial decision to detain an alien, the alien may request a bond hearing in Immigration Court and can appeal to the BIA if necessary.  8 C.F.R. § 236.1(d)(1)-(3).

[4] The Supreme Court has recognized that it "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens."  *Demore,* 538 U.S. at 522 (citations omitted).

apply for relief from removal, to include Voluntary Departure, certainly does not implicate due process concerns.

**4.  Any future challenge to removal from the United States must proceed administratively before being raised to the circuit court.**

If ICE initiates removal proceedings against Petitioner, he will have an opportunity to contest the initiation of such proceedings and to seek relief from his removal in Immigration Court, before the BIA, and eventually, if necessary, before a court of appeal.  Petitioner acknowledges as much.  Doc. No. 9, ¶¶ 17-18.  District courts, however, play no role in such process as made clear by Congress and the First Circuit and as such, Petitioner's request for this Court to step into the role of an IJ and order that he be entitled to Voluntary Departure in lieu of removal proceedings must be denied.

In passing the REAL ID Act, Congress prescribed a single path for judicial review of orders of removal entered through the administrative process: "a petition for review filed with an appropriate court of appeals."  8 U.S.C. § 1252(a)(5); *Gicharu v. Carr*, 983 F.3d 13, 16 (1st Cir. 2020).  A circuit court can consider "constitutional claims or questions of law" in the petition for review.  8 U.S.C. § 1252(a)(2)(D).  Congress, however, channeled to the courts of appeals, not just challenges to the removal decision, but also to challenges to the removal process.  *Aguilar et al., v. USICE, et al.*, 510 F.3d 1, 9 (1st Cir. 2007) (Section 1252(b)(9) "was designed to consolidate and channel review of *all* legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively with the courts of appeals.") (emphasis in the original).

Per Section 1252(b)(9), "judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* …. shall be available

only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis

added); *Gichuru*, 983 F.3d at 16 ("Adding belt to suspenders, section 1252(b)(9) strips federal

courts of jurisdiction to decide legal and factual questions arising from an alien's removal in

any other context, *including on a petition for a writ of habeas corpus*.") (emphasis added). The

First Circuit has described the expanse of § 1252(b)(9) as "breathtaking" and "vise-like".

*Aguilar*, 510 F.3d at 9. In passing this provision, "Congress plainly intended to put an end to

the scattershot and piecemeal nature of the review process that previously had held sway in

regard to removal proceedings." *Id.*

       Pursuant to these provisions, Petitioner must present removability issues related to the

revocation of his visa or regarding his requests for relief from removal at the administrative

level and not to this Court. 8 U.S.C. § 1201(i) allows for judicial review of his visa's

revocation in the context of removal proceedings and therefore Section 1252(a)(5) and (b)(9)

channel any claims related to the revocation of his visa to an IJ, the BIA, and eventually to the

circuit court. In a recent case filed seeking a Temporary Restraining Order, the plaintiff alleged

that the visa revocation and ICE's initiation of removal proceedings violated his First

Amendment rights. *Taal v. Trump,* No. 3:25-CV-335 (ECC/ML), 2025 WL 926207, at *2

(N.D.N.Y. Mar. 27, 2025). The district court, however, found that the plaintiff had not

established it had jurisdiction due to Section 1252(a)(5) and 1252(b)(9). *Id.* The court

explained that plaintiff's "challenge to the basis for commencing his removal proceedings," "is

part of the process by which … removability will be determined, and [plaintiff's] claims

therefore arise from the removal proceedings." *Id.* (cleaned up). This Court should conclude

similarly.

    **5.**  **<u>This Court lacks jurisdiction over decisions concerning Plaintiff's Voluntary
Departure from the United States.</u>**

Plaintiff wants to depart the United States voluntarily after he resolves the pending criminal charges against him and therefore asks this Court to order ICE to grant him the privilege of Voluntary Departure in lieu of removal proceedings and a possible removal order against him. Doc. No. 9, PRAYER FOR RELIEF. This Court lacks jurisdiction to enter such an order, however, as this claim is related to the removal process and because Congress has sharply curtailed judicial review of decisions concerning the Voluntary Departure. *See Vega-Del Roquel v. Barr,* 568 F. Supp. 3d 73, 76 (D. Mass. 2021) (Explaining that "[o]nly claims that are not related in any way to the removal process are beyond the scope of [Section 1252(b)(9)] and therefore within the jurisdiction of federal courts.").

Voluntary Departure is a privilege where an alien is allowed to depart the United States without being subjected to removal proceedings or without the entrance of a removal order against such alien. *See* 8 U.S.C. § 1229c. ICE maintains sole discretion to allow an individual to depart the United States voluntarily prior to the initiation of removal proceedings. 8 U.S.C. § 1229c(a)(1). Pursuant to 8 U.S.C. § 1252(a)(2)(B)(i), this court lacks jurisdiction to review "any judgment regarding the granting of relief under …. 1229c of this title." Further, ICE's decision to decline to allow Voluntary Departure prior to the initiation of removal proceedings is insulated from judicial review by Section 1252(g). *See Valencia-Mejia v. United States*, No. CV 08-2943 CAS PJWX, 2008 WL 4286979, at *4 (C.D. Cal. Sept. 15, 2008) (Finding 1252(g) barred judicial review of ICE's decision to deny plaintiff's request for immediate voluntary departure and instead issue plaintiff an NTA and detain him until his hearing before the IJ because the decision "arose from this decision to commence proceedings."). As such, this Court lacks jurisdiction over ICE's decisions concerning Petitioner's desire to depart the United States through an application for Voluntary Departure.

Any application for Voluntary Departure once removal proceedings are initiated must be made to, and decided by, an IJ.  8 U.S.C. § 1229c(a)-(b).  A denial of Voluntary Departure, however, is not subject to judicial view in federal court.  8 U.S.C. § 1229c(f) ("No court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure under subsection (b), nor shall any court order a stay of an alien's removal pending consideration of any claim with respect to voluntary departure.").

The First Circuit has made clear that an alien cannot raise "a colorable due process claim solely on the denial of an opportunity to depart later." *Jupiter v. Ashcroft,* 396 F.3d 487, 492 (1st Cir. 2005).  This is because "[f]or due process to attach, there must be a cognizable liberty or property interest at stake." *Id.*  But, as explained by the Court, "[t]here is no property interest involved and, because the relief of voluntary departure … is essentially discretionary, there is no cognizable liberty interest in that remedy." *Id.*  As such, this Court lacks jurisdiction to order ICE to grant Petitioner the privilege of Voluntary Departure from the United States.

## CONCLUSION

For these reasons, this Court lacks jurisdiction to review the challenged government action and issue the requested relief and must therefore deny the Amended Petition as well as the Motion for TRO as Petitioner cannot succeed on the merits of the underlying action and Petitioner cannot establish irreparable harm absent injunctive relief and an injunction is not in the public interest.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: April 28, 2025          By:     */s/ Mark Sauter*
                                        Mark Sauter
                                        Assistant United States Attorney

United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
Tel.: 617-748-3347
Email: mark.sauter@usdoj.gov

## CERTIFICATE OF SERVICE

I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated:  April 28, 2025                    By:      */s/ Mark Sauter*
                                                   Mark Sauter
                                                   Assistant United States Attorney