UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EFE ERCELIK<br>    *Petitioner,*<br><br>v.<br><br>PATRICIA HYDE, Acting Director of Boston Field Office, U.S. Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the U.S. Department of Homeland Security; PAMELA BONDI, Attorney General of the United States; in their official capacities,<br>    *Respondents.* | Case Number: 1:25-cv-11007-AK |

**MOTION OF THE INTERCEPT MEDIA, INC. TO INTERVENE AND LIFT THE REMOTE ACCESS RESTRICTIONS UNDER FED. R. CIV. P. 5.2(c), WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ. P. 24(b), non-party The Intercept Media, Inc. ("The Intercept") respectfully moves for leave to intervene and requests that the Court issue an order directing the Clerk of Court to make the judicial records filed in the above-captioned matter electronically accessible to the public.

    I.    INTRODUCTION AND BACKGROUND

The Intercept Media, Inc., publisher of The Intercept, is a nonprofit digital news outlet that has been covering the numerous legal challenges around the country to the federal government's detention and attempted deportation of student protestors.[1] This is one of those

---

[1] *See, e.g.*, Natasha Lennard, *Universities Told Students to Leave the Country. ICE Just Said They Didn't Actually Have To*, The Intercept (Apr. 17, 2025), https://theintercept.com/2025/04/17/international-student-visas-deport-dhs-ice/; Jonah Valdez, *In Trump's America, You Can Be Disappeared for Writing an Op-Ed*, The Intercept (Mar. 30, 2025), https://theintercept.com/2025/03/30/tufts-rumeysa-ozturk-ice-immigration-op-ed; Akela Lacy, *Palestinian Student Leader Was Called In for Citizenship Interview—Then Arrested by ICE*, The Intercept (Apr. 14, 2025), https://theintercept.com/2025/04/14/ice-columbia-student-mohsen-mahdawi-citizenship-

1

cases: the Petitioner, Efe Ercelik, was present in the United States on an F-1 visa during his undergraduate education, and was detained until this Court ordered his immediate release on the grounds that Ercelik's constitutionally "protected conduct" was likely "the substantial or motivating factor for ICE's pursuit of his detention." (Doc No. 35) at 2–3, 23 ("TRO Order").  Cases like Mr. Ercelik's are matters of profound national importance. They have fueled a public debate about the scope and legality of the Trump administration's actions regarding student protestors. In each case, it is vital that the public have the chance to understand the parties' arguments as well as the evidence upon which the courts evaluate them.

Because Mr. Ercelik's case is an immigration proceeding, Rule 5.2(c) and this District's General Order 19-02 placed a prohibition on remote access to the full electronic record via PACER until May 16, 2025, thirty days after this case was filed.  Although May 16 has passed, this restriction is still in place.  Members of the press and the public may only access the full record by visiting the courthouse in person. Under General Order 19-02, parties had until May 1 to make an objection to public electronic access, but neither party appears to have done so.

Accordingly, The Intercept moves for leave to intervene and respectfully requests that the Court enter an order directing the Clerk of Court to make all filings in this case accessible electronically, except where the Court has made specific findings that a judicial record, or portions of a judicial record, must remain under seal.[2] *See In re Providence Journal Co., Inc.,* 293 F.3d

---

interview/; Jonah Valdez, *What Comes Next in Mahmoud Khalil's Fight Against Deportation*, The Intercept (Apr. 12, 2025), https://theintercept.com/2025/04/12/mahmoud-khalil-immigration-hearing-deportation-trump.

[2] A similar order has been issued in *Alawieh v. Noem*, 1:25-cv-10614, ECF No. 35 (D. Mass. May 13, 2025). In several other related cases, this has been accomplished by directing the Clerk to change the "nature of suit" code in the case to No. 530 ("Habeas Corpus"). *See, e.g., J.A.V. v. Trump*, No. 1:25-cv-00072, ECF No. 55 (S.D. Tex. Apr. 25, 2025); *W.M.M. v. Trump*, No. 1:25-cv-00059, ECF No. 53 (N.D. Tex. Apr. 29, 2025).

1, 13 (1st Cir. 2002) (cautioning that impingements on the First Amendment right of public access must be supported by specific findings).

## II.    ARGUMENT

### 1. The Intercept's motion to intervene should be granted.

"[P]ermissive intervention" under Fed. R. Civ. P. 24(b) is "the procedurally correct vehicle" for a member of the press to vindicate its right of access to judicial records and proceedings, *R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 11 (1st Cir. 2009); *see also Pub. Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783–84 (1st Cir. 1988). Accordingly, intervention is subject to Rule 24(b)'s requirements, namely that a motion must be timely, not cause prejudice to the parties, and the movant must have a claim that shares with the main action a common question of law or fact. The Intercept meets these requirements.

### a.    The motion is timely and will not cause prejudice.

To evaluate timeliness, courts first look to "when the intervenor became aware that its interest in the case would no longer be adequately protected by the parties," *Pub. Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 785 (1st Cir. 1988) (discussing the factors laid out in *Culbreath v. Dukakis*, 630 F.2d 15 (1st Cir. 1980)), *accord. R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 11 (1st Cir. 2009). Under General Order 19-02, limitations on electronic access to the case materials should have expired on May 16. Until then, The Intercept had every expectation that the normal functioning of General Order 19-02 would result in the provision of electronic access. Once this deadline passed, without objections from either party, and the restrictions were not lifted, The Intercept became aware that its interests would not be adequately vindicated. This motion, filed days after that point, is timely.

Courts also look to whether there would be any prejudice to existing parties based on the movant's delay in intervening or its intervention, *Pub. Citizen,* 858 F.2d at 786, *see also* Rule 24(b)(3)("In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."). Here, there is no

3

prejudice to the parties. "Because [movant seeks] to litigate only the issue of the protective order, and not to reopen the merits, . . . [its] . . . intervention cause[s] little prejudice to the existing parties in this case." *Pub. Citizen,* 858 F.2d at 786. Likewise, the lack of objections made under the framework laid out in General Order 19-02(2) further suggest that no prejudice will occur.

Finally, courts evaluate the prejudice to the proposed intervenor if the motion for intervention is not granted. *Pub. Citizen,* 858 F.2d at 787. Such an analysis is straightforward in circumstances where a party seeks to vindicate the public's right of access. Like Public Citizen in *Pub. Citizen v. Liggett Group*, "[The Intercept] has asserted, on behalf of the public, a right to have the protective order modified . . ., and that, prior to [The Intercept's] action, this interest was not being pursued by any of the parties to the case." *Id.*

    b. *The Intercept's claims share questions of law or fact with the main action.*

In order to successfully intervene under Rule 24 in this context, a movant's claims must share a common question of law or fact with the main action. Rule 24(b)(1)(B). "When, however, the party moving to intervene does so for a limited purpose and does not seek to become a party to the litigation, the nexus-of-fact-or-law requirement is loosened, and specificity, e.g., that the intervenors' claim involve the same legal theory that was raised in the main action, is not required." *Doe v. Town of Lisbon,* No. 1:21-CV-944-JL, 2022 WL 2274785, at *2 (D.N.H. June 23, 2022) (cleaned up), *aff'd on other grounds*, 78 F.4th 38 (1st Cir. 2023); *see also Comm'r v. Advance Local Media, LLC,* 918 F.3d 1161, 1173 n.12 (11th Cir. 2019) ("Many circuits recognize that parties 'seeking to intervene in a case for the limited purpose of unsealing judicial records' need not show a 'strong nexus of fact or law' to the issues in the original case.") (quoting *Flynt v. Lombardi*, 782 F.3d 963, 967 (8th Cir. 2015)). Recognizing this loosened standard, and the flexibility of Rule 24 more generally, courts have found that challenges to confidentiality orders over proceedings provide a question of law or fact in common with the main action for purposes of intervention. *United States v. Bulger*, No. 99-cr-10371, 2012 WL 2402802, at *1 (D. Mass. June 26, 2012) (allowing the *Boston Globe* to intervene to challenge a protective order); *accord. Jessup v. Luther*, 227 F.3d 993,

998 (7th Cir. 2000); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994). In this case, The Intercept similarly seeks to challenge the practical impediment to access imposed by the application of Rule 5.2(c) to this proceeding.

A "representative[] of the press and general public 'must be given an opportunity to be heard on the question of their exclusion'" when access to records is at stake, *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982)(quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 401 (Powell, J., concurring)). The Intercept's motion to intervene should be granted.

## 2. The judicial records in this case should be made electronically accessible to the public.

Courts have long recognized that public monitoring of the judicial system, particularly "[a]ccess to judicial records and documents[,] allows the citizenry to monitor the functioning of our courts, thereby insuring quality, honesty and respect for our legal system." *See United States v. Kravetz*, 706 F.3d 47, 52, 57 (1st Cir. 2013)(quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)). For these reasons, the public has the right to inspect and copy judicial records under both the common law and the First Amendment. *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 9 (1st Cir. 1998) ("The common law presumes a right of public access to judicial records."); *In re Providence Journal Co., Inc.*, 293 F.3d 1, 10 (1st Cir. 2002) (discussing overlap between the common law and First Amendment rights). Under these rights, and the relevant District Court order that effectuates them in this context, this Court should lift the present limits on electronic access to the judicial records.

### a. General Order 19-02 Instructs this Court to Lift Limits on Electronic Access

This District has addressed this right of public access to court records in cases governed by Fed. R. Civ. P. 5.2(c) in its General Order 19-02. This Order ensures that limits on electronic access under 5.2(c) will be lifted, unless a party objects to such public access within fourteen days of the case filing (here, May 1, 2025). General Order 19-02(2). The Order therefore provides a standard mechanism by which the public's interest in understanding the functioning of the courts is balanced with the special sensitivities of immigration proceedings. Information that would

normally be withheld from electronic records under Fed. R. Civ. P. 5.2(a) may still be withheld under this rule, including taxpayer identification numbers, birthdates, and names of individuals known to be minors. General Order 19-02(1).[3]

The parties in the present proceeding were informed of General Order 19-02 on the docket. (Doc No. 3). From the limited information available, it does not appear that either party has filed objections to the case filings being electronically accessible. As thirty days have passed since filing, the restrictions should be lifted as a matter of standard practice under the Order.

> b. *The Intercept and the Public Have a Common Law and First Amendment Right to Electronically Access These Records.*

Beyond the procedure outlined in the General Order, The Intercept and other members of the press and broader public have both a common law and a First Amendment right to access these proceedings. "Although the two rights of access are not coterminous, courts have employed much the same type of screen in evaluating their applicability to particular claims." *In re Providence Journal Co., Inc.*, 293 F.3d 1, 10 (1st Cir. 2002).

Within the First Amendment right of access, the First Circuit has yet to directly address the scope of the right to civil proceedings, but "each of [its] sister circuits that has considered whether the right extends to at least some documents and proceedings in civil cases concluded that it does." *Courthouse News Serv. v. Quinlan*, 32 F.4th 15, 20 n.8 (1st Cir. 2022) (citing, *inter alia*, *Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir. 1983), a civil case challenging prison confinement). The United States District Court for the District of Columbia extensively analyzed the applicability of a First Amendment right of access to habeas proceedings, and found that it applied, noting that "access to habeas proceedings has been historically available," and that access plays a "significant positive role in the functioning" of those proceedings. *In re Guantanamo*

---

[3] The Intercept does not seek the right to electronic access to information that would normally be withheld under Fed. R. Civ. P. 5.2(a). It notes that in a similar recent case, the court resolved this by ordering the immediate release of all records except two filings that contained private information and having the parties promptly re-file those two records with appropriate redactions. Minute Order, *Patel v. Lyons*, No. 25-cv-01096 (D.D.C. May 6, 2025).

*Bay Detainee Litig.*, 624 F. Supp. 2d 27, 35–38 (D.D.C. 2009). Given this, the First Amendment provides the public a right of access that may be overcome "only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Sup. Ct. of Cal.*, 478 U.S. 1, 9 (1986). Any asserted interest in sealing must be "articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *See id.*; *Courthouse News Serv.*, 32 F.4th at 21 (specific factual justifications would be required to assess whether the state had met its burden to limit access to civil complaints). Here, no overriding interest justifies the wholesale denial of electronic access to the judicial records; nor is the blanket closure of electronic access under Rule 5.2(c) narrowly tailored to serve that interest. *See In re Providence Journal Co., Inc.*, 293 F.3d at 15 (finding that the lower court's "refusal to consider redaction on a document-by-document basis is insupportable").

Even in cases where the First Amendment right of access does not apply, "there is a strong common law presumption favoring public access to judicial proceedings and records." *In re Salem Suede, Inc.*, 268 F.3d 42, 45 (1st Cir. 2001). Under this common law right, a "presumptive right of access attaches to those materials 'which properly come before the court in the course of an adjudicatory proceeding and which are relevant to that adjudication.'" *In re Providence Journal Co., Inc.*, 293 F.3d 1, 9 (1st Cir. 2002) (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 412–13 (1st Cir. 1987)). The present case has already included multiple petitions and briefing on a temporary restraining order, as well as a stipulation of dismissal. *See generally* TRO Order, (Doc No. 35) (discussing substantive aspects of these and other filings). These all are materials which are relevant to the adjudication of this proceeding. Accordingly, this Court must balance this right of access against any asserted grounds for limiting access, "keeping in mind that 'only the most compelling reasons can justify non-disclosure of judicial records that come within the scope of the common-law right of access.'" *United States v. Kravetz*, 706 F.3d at 59 (quoting *In re Providence Journal Co., Inc.*, 293 F.3d at 10).

These rights require electronic access to the proceeding even if access is available through alternative means. The First Circuit has recognized that "practical inconvenience" can violate the right of access, even if access is not completely prevented. *In re Providence Journal Co., Inc.*, 293 F.3d 1, 11 (1st Cir. 2002); *see also Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 507 (1st Cir. 1989) (a procedure of "sealing records in the first instance and requiring those seeking access to initiate an administrative or judicial action" was impermissible because it "places on the public the burden of overcoming inertia" in order to release records). Here, the continued application of Rule 5.2(c) places the burden of overcoming inertia on the public. Under these restrictions, members of the press and the public may only access the full electronic record by visiting the courthouse in person. The Intercept's journalists cover this case remotely, and do not have the capacity to travel to Boston to cover the proceedings or access court filings. Nor should The Intercept be required to spend its limited financial resources to hire a runner to access those records. The limitations on electronic access frustrate the right of the broader public to track contemporaneous case developments that are not contained in docket text, or "an opinion, order, judgment, or other disposition of the court[.]" Fed. R. Civ. P. 5.2(c)(2)(B).

And they do so in a case that has immense public interest, as allegations and evidence of an apparent campaign by the current administration to target noncitizen students for their political speech have been the subject of considerable criticism and attention. *See* Jonah Valdez, *Trump Appears to Be Targeting Muslim and "Non-White" Students for Deportation*, The Intercept (Apr. 8, 2025), https://theintercept.com/2025/04/08/trump-immigration-international-student-visas-deport/. Indeed, this Court has noted the similarities between other cases of national interest involving noncitizen speech on campus and this one. TRO Order, (Doc No. 35) at 10 (noting the lack of jurisdiction stripping in *Ozturk v. Trump*, No. 25-cv-375, 2025 WL 1145250 (D. Vt. April 18, 2025) and *Am. Ass'n of Univ. Professors v. Rubio*, No. 25-cv-10685, 2025 WL 1235084 (D. Mass. April 29, 2025)). Recognizing the public attention and need for systemic evaluation, many courts handling cases raising similar claims as this matter have lifted the limitations on electronic access imposed by Rule 5.2(c). *See, e.g.*, *Khalil v. Joyce*, No. 1:25-cv-01935, ECF No. 35 (S.D.N.Y. Mar.

8

12, 2025); *G.F.F. v. Trump*, No. 1:25-cv-02886, ECF No. 39 (S.D.N.Y. Apr. 15, 2025); *A.S.R. v. Trump*, No. 3:25-cv-00113, ECF No. 46 (W.D. Pa. Apr. 25, 2025); *J.A.V. v. Trump*, No. 1:25-cv-00072, ECF No. 55 (S.D. Tex. Apr. 25, 2025), Minute Order, *Patel v. Lyons*, No. 25-cv-01096 (D.D.C. May 6, 2025); *Ozturk v. Hyde*, No. 25-1019, ECF No. 76 (2d Cir. May 8, 2025); *Alawieh v. Noem*, 1:25-cv-10614, ECF No. 35 (D. Mass. May 13, 2025).

Accordingly, The Intercept respectfully asks that the Court do the same and lift the restrictions under Rule 5.2(c) in this matter. Doing so not only facilitates more accurate and thorough press coverage of these proceedings; it also serves a "major purpose" of the First Amendment—"to protect the free discussion of governmental affairs" so that the public "can effectively participate in and contribute to our republican system of self-government." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 604 (1982).

### III.    CONCLUSION

For the foregoing reasons, The Intercept requests that this court grant its motion to intervene and issue an order directing the Clerk of Court to make the judicial records filed in the above-captioned matter electronically accessible to the public.

Dated: May 23, 2025

Respectfully submitted,

/s/ Kendra K. Albert

Kendra K. Albert (BBO # 705086)
Andrew F. Sellars (BBO # 682690)
ALBERT SELLARS LLP
48 Wyman St, Unit 2
Jamacia Plain, MA 02130
(203) 424-0382
kendra@albertsellars.law

Attorneys for *The Intercept Media, Inc.*

**LOCAL RULE 7.1 CERTIFICATION**

The undersigned hereby certifies that counsel for the Intercept contacted respective counsel for Plaintiff Erke Ercelik and Defendants Patricia Hyde, Kristi Noem and Pamela Bondi, (the "Government Defendants") in a good faith attempt to resolve or narrow the issues raised by this motion. The Government Defendants take no position on the motion. Plaintiff's counsel was unable to take a position on the motion.

Dated: May 23, 2025

/s/ Kendra K. Albert
Kendra K. Albert (BBO # 705086)

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 23, 2025, I electronically filed the original of this motion with the Clerk of the Court using the CM/ECF filing system. Notice of this filing will be sent to all attorneys of record by operations of the Court's electronic filing system.

Dated: May 23, 2025

/s/ Kendra K. Albert
Kendra K. Albert (BBO # 705086)